TOWN OF DANVERS vs. WEXLER CONSTRUCTION CO., INC.,
& others;[1] UNITED ELECTRICAL CONTRACTORS, INC.,
& another,[2] third-party defendants.

Essex.    May 7, 1981. — June 30, 1981.

Present: GREANEY, CUTTER, & KASS, JJ.

*Arbitration*, Multiple claims, Stay of judicial proceedings.

A judge erred in refusing to stay proceedings on a third-party complaint
    pending arbitration pursuant to an agreement between the third-party
    plaintiff and defendants where the issues raised by the complaint fell
    within the arbitration agreement's coverage and were proper subjects
    for arbitration and where neither judicial economy nor the interests of
    other parties to the case would suffer material harm by the requested
    stay.  [162-168]

CIVIL ACTION commenced in the Superior Court on
November 20, 1975.

Third-party defendants' motion for stay of proceedings
was heard by *Bennett*, J.

*Peter J. McCue* for United Electrical Contractors, Inc., &
another.

*Robert J. Sherer* for Wexler Construction Co., Inc.

GREANEY, J.  This is an appeal from the Superior Court's
refusal to stay proceedings on a third-party complaint pend-
ing arbitration.  We conclude that a stay should have been
granted.

The parties have agreed on the facts.  The underlying
dispute arose out of a construction contract for renovations

[1] Reliance Insurance Company, G. Salvucci and Company, Columbia
Cornice Company, Thompson and Lichtner Company, Inc., John H. Set-
tles Company, Inc., Dow Chemical Company, and Caudill, Rowlett,
Scott, Architects P.C.

[2] United Pacific Insurance Company.

12 Mass. App. Ct. 160                                    161

Danvers v. Wexler Construction Co., Inc.; United Electrical Contractors, Inc.

and an addition to the Danvers High School. The town (the owner of the school) brought suit against Wexler, the general contractor, and seven other defendants, including certain subcontractors and material suppliers, on theories of breach of contract, negligence and product liability. Wexler served cross claims on those of its subcontractors which were joined with it as defendants, and initially brought third-party actions against two subcontractors other than United Electrical, and against the surety of a third subcontractor which has been adjudicated a bankrupt.

During discovery, Wexler ascertained that one of the town's complaints concerned failure of the heating and air conditioning systems to function properly as the result of allegedly improper power wiring. Based on this discovery, Wexler served a third-party complaint upon United Electrical, the electrical subcontractor, and United Pacific, its bonding company, asserting that the power wiring of the heating and air conditioning systems was United Electrical's responsibility and seeking judgment against both third-party defendants "[i]n the amount of any judgment entered against [it] in favor of the [t]own by reason of deficiencies in the heating and air-conditioning system[s]."

The contract between the town and Wexler contains an agreement to submit "[a]ll claims, disputes and other matters in question arising out of, or relating to, this contract or the breach thereof to arbitration" under the Construction Industry Arbitration Rules of the American Arbitration Association.. This arbitration provision was incorporated in Wexler's subcontract with United Electrical and in United Pacific's performance and payment bond. No other party to the action is a party to this arbitration agreement, or to the contract between these parties.

In their answer to Wexler's third-party complaint, United Electrical and United Pacific raised the arbitration agreement as an affirmative defense and requested a stay of the third-party action pending arbitration. Both third-party defendants then moved (see G. L. c. 251, §§ 2[a], 2[d] and 15) for a stay of the third-party action pending arbitration

of the issues raised by Wexler's complaint. A judge of the Superior Court denied the motion but permitted the moving parties to renew their motion to stay, to add thereto a motion for severance of severable issues, and to file a timely application for arbitration.

In keeping with that determination, United Electrical and United Pacific filed an application for arbitration with the American Arbitration Association and resubmitted their motion for a stay, accompanied by a motion for severance of severable issues. The judge then entered an order that the motion for a stay would be denied unless the town should agree to participate in the arbitration. The town declined, for reasons which do not appear in the record, and an order entered denying the requested stay. United Electrical and United Pacific now appeal.[3]

The arbitration clause at issue is within the coverage of G. L. c. 251 which governs the arbitration of commercial disputes in this State.[4] Section 1 of that chapter provides that a written agreement to arbitrate "shall be valid, enforceable and irrevocable . . . ." Section 2(a) states that if the Superior Court finds, after summary proceedings, that a valid agreement to arbitrate exists, it "shall . . . order arbi-

---

[3] The parties have treated the effect of the judge's action as equivalent to an order refusing to compel arbitration which is presently appealable under G. L. c. 251 § 18(a)(1) and (2). We agree with this view and hold, for purposes of this decision, that the challenged order is appealable. See *Layne-Minn. Co.* v. *Regents of Univ. of Minn.*, 266 Minn. 284, 286 (1963). Compare *Roeder* v. *Huish*, 105 Ariz. 508, 510 (1970); *Harris* v. *State Farm Mut. Auto. Ins. Co.*, 283 So. 2d 147, 148-149 (Fla. App. 1973); *Maietta* v. *Greenfield*, 267 Md. 287, 289-294; *Miyoi* v. *Gold Bond Stamp Co. Employees Retirement Trust*, 293 Minn. 376, 378 (1972). See generally *School Comm. of Agawam* v. *Agawam Educ. Assn.*, 371 Mass. 845, 847-848 nn.5, 6 (1977) (construing identical provisions of G. L. c. 150C, § 16); *Quirk* v. *Data Terminal Syss., Inc.*, 379 Mass. 762, 763-764 (1980). Cf. *Hilti, Inc.* v. *Oldach*, 392 F.2d 368, 369 (1st Cir. 1968); *Warren Bros. Co.* v. *Cardi Corp.*, 471 F.2d 1304, 1306 (1st Cir. 1973).

[4] General Laws c. 251, inserted by St. 1960, c. 374, § 1, adopts the Uniform Arbitration Act. See 7 U.L.A., Uniform Arbitration Act §§ 1-25 (Master ed. 1978).

tration." Section 2(*d*) requires that "[*a*]*ny action or proceeding* involving an issue subject to arbitration *shall be stayed* if . . . an application [for arbitration] has been made . . . or, if the issue is severable, the stay may be with respect to such issue only . . ." (emphasis supplied).

Our courts have consistently held that the foregoing statutory provisions express a strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial disputes. It has often been said, for example, that an agreement to arbitrate which is expressed in general terms "should be construed as broadly as it was intended" (*Carter, Moore & Co.* v. *Donahue,* 345 Mass. 672, 676 [1963]; *Glenn Acres, Inc.* v. *Cliffwood Corp.,* 353 Mass. 150, 154 [1967]; *Mendez* v. *Trustees of Boston Univ.,* 362 Mass. 353, 356 [1972]) and that, under such a clause, the parties are deemed to have consented in advance to arbitrate any dispute which they cannot settle between themselves (see *Glenn Acres, Inc.* v. *Cliffwood Corp., supra* at 154-155; *Quirk* v. *Data Terminal Syss., Inc.,* 379 Mass. 762 765 [1980]), and to have assented to be bound by the arbitrator's honest judgment on the matter presented. See *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.,* 363 Mass. 386, 390-391 (1973); *Geller* v. *Temple B'nai Abraham,* 11 Mass. App. Ct. 917, 918 (1981). The Supreme Judicial Court recently stated that "the arbitration procedure, when selected by the parties to a contract, should . . . not [be] subject to delay and obstruction in the courts." *Quirk* v. *Data Terminal Syss., Inc., supra* at 767. Thus, once a dispute is determined to be arbitrable, it should, barring compelling reasons to the contrary, be remitted to the arbitral forum for consideration. *Id.* ·

The parties appear to agree that a valid arbitration agreement exists, that its provisions are broad in scope, and that the issues raised by the third-party complaint fall within the agreement's coverage and are presently proper subjects for arbitration. The court's initial order with respect to the motion to stay implicitly acknowledged the existence and

applicability of the arbitration agreement. These circumstances ordinarily would be sufficient to require granting the requested stay.

In denying the stay, however, the judge appears to have been concerned about two possibilities: first, that judicial economy might suffer by remitting one part of a multiclaim lawsuit to arbitration while retaining the rest of the action for trial; and second, that the town, Wexler, or some other party to the lawsuit might be prejudiced by a stay of this third-party action. We do not think that either of these concerns is sufficient to defeat a stay.

A court, of course, has the power, inherently and by rule, to control the efficient disposition of cases on its docket. See *Landis* v. *North American Co.*, 299 U.S. 248, 254-255 (1936); *Cutler Associates, Inc.* v. *Merrill Trust Co.*, 395 A. 2d 453, 456-457 (Me. 1978); Mass.R.Civ.P. 13 and 14, 365 Mass. 758-761 (1974). Nevertheless, most courts that have dealt with the question of a stay in the context of strong arbitration statutes like the Uniform Arbitration Act,[5] have wherever possible, preferred enforcement of arbitration agreements between parties to a multiparty lawsuit. See *Sam Reisfeld & Son Import Co.* v. *S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976) (in multiparty, multiclaim action, the trial court properly ordered that the nonarbitrable claims proceed to trial while the remaining claims simultaneously proceed to arbitration); *C. Itoh & Co. (America) Inc.* v. *Jordan Intl. Co.*, 552 F.2d 1228, 1231 (7th Cir. 1977); *China Union Lines Ltd.* v. *American Marine Underwriters, Inc.*, 458 F. Supp. 132, 135-136 (S.D.N.Y. 1978); *Andrew Martin Marine Corp.* v. *Stork-Werkspoor Diesel B.V.*, 480 F. Supp. 1270, 1275 (E.D. La. 1979); *Madden* v. *Kaiser Foundation Hosp.*, 17 Cal. 3d 699, 714 (1976); *Farris*

---

[5] We include in this category, the United States Arbitration Act, 9 U.S.C. §§ 1-14 (1976), which also treats arbitration agreements as "valid, irrevocable, and enforceable" (§ 2), and which requires a Federal court to stay legal proceedings pending arbitration, if the issue or issues involved fall within the scope of an agreement to arbitrate and if the applicant for the stay is not in default in proceeding with arbitration (§ 3).

v. *Hedgepeth*, 58 Ill. App. 3d 1040, 1043-1044 (1978). See also Eager, The Arbitration Contract and Proceedings § 82(7), at 228, and notes at 232-233 (1971). Contrast *Caron* v. *Barkan Constr. Co.*, 11 Mass. App. Ct. 1030 (1981) (proper to deny a defendant's motion for a stay of *all* proceedings pending arbitration of its cross claim against a codefendant). They have all done so on the express or implied basis that the strong policy in favor of arbitration usually necessitates a stay despite the fact that some judicial inefficiency might result.[6] The United States Court of Appeals for the First Circuit subscribes to this view, and held in *Maldonado* v. *PPG Indus., Inc.*, 514 F. 2d 614 (1st Cir. 1975), that a third-party action seeking contribution should be stayed for arbitration at the request of the third-party defendant rather than being tried with the principal action. "If a claim of right to arbitration could be foreclosed whenever a dispute between the parties to the contract derives from another person's claim against one of the parties, the utility of broad arbitration agreements would be undermined." *Id.* at 617. Cf. *Hilti, Inc.* v. *Oldach*, 392 F.2d 368, 369 n.2 (1st Cir. 1968) (stay required based on arbitration agreement between plaintiff and defendant even though second defendant was not a party to the arbitration agreement). So also do the New York courts, the decisions of which are looked upon with favor (see *Stop & Shop Cos.* v. *Gilbane Bldg. Co.*, 364 Mass. 325, 329 [1973]) in interpreting G. L. c. 251. See *Knolls Coop. Section No. 1, Inc.* v. *Hennessy*, 3 Misc. 2d 220, 223 (N.Y. Sup. Ct. 1956) ("It is no answer that the litigation between the owner and the contractor may be resolved at law, and that therefore the controversy between the contractor and the subcontractor should also be determined at law. For . . . the contractor and subcontractor chose arbitration as the method of settling the disputes between them, and the agreement to that

---

[6] Indeed, § 2(*d*) of c. 251 indicates that the Legislature intended that arbitration take place even where it would necessitate separating certain issues or parties from a multiclaim, multiparty action.

effect may be relied on by the latter to preclude the maintenance of a third-party action at law against it"). See also *Corbetta Constr. Co.* v. *George F. Driscoll Co.*, 17 App. Div. 2d 176, 179 (N.Y. 1962). There is some authority to the contrary. See *Prestressed Concrete, Inc.* v. *Adolfson & Peterson, Inc.*, 308 Minn. 20, 24 (1976), and *County of Jefferson* v. *Barton-Douglas Contractors, Inc.*, 282 N.W. 2d 155, 158-159 (Iowa 1979).[7]

While we are not prepared to say that a judge lacks discretion in this situation, we do not think that judicial economy, or the interests of other parties, will suffer any material harm by the requested stay. The issues raised by Wexler's third-party complaint (i.e., whether United Electrical was responsible for the power wiring, and, if so, whether it performed its work in a deficient manner) are peripheral to, and can be handled separately from, the issues in the main litigation. No material prejudice to any other parties in the case has been argued or shown, and the stay from what appears in the record will be minimally disruptive at the worst. Wexler may still claim and assert all the defenses available to it in response to the town's claims and it may fully litigate its cross claims and other third-party actions. Wexler points to the facts that it may be exposed to inconsistent results (the jury finding against it and the arbitrator finding for United Electrical), and that it may have to try certain aspects of the case twice and assert contradictory positions in different proceedings. But these risks and burdens inhere in, and flow from, Wexler's broad and unconditional agreement to arbitrate "all claims, disputes and other matters" relating to the electrical subcontract. They are insufficient, in our opinion, to deny recourse to arbitration — a result which would, in essence, disregard the method specifically chosen by the parties to settle all their disputes and which would judicially rewrite

---

[7] Iowa has not adopted the Uniform Arbitration Act.

their contract for them.[8]  See *Stop & Shop Cos.* v. *Gilbane Bldg. Co.*, 364 Mass. at 329.  See also *Roberto Constr. Co.* v. *Burnham-Manning Post # 1105 Veterans of Foreign Wars of the U.S., Inc.*, 347 Mass. 400, 404 (1964).  We consider the conclusion that arbitration should be required as faithful to analogous precedents which safeguard the right to arbitration in the absence of compelling reasons to the contrary.  See e.g., *Salvucci* v. *Sheehan*, 349 Mass. 659, 663 (1965) (arbitration may not be avoided by filing a legal or equitable action); *Quirk* v. *Data Terminal Syss. Inc.*, *supra* at 766 (legislative intent in c. 251 would be frustrated if arbitration could be circumvented by allegation of fraud in the inducement of the contract as a whole, rather than arbitration provision alone); *Kelleher* v. *Cersosimo*, 2 Mass. App. Ct. 904, 905 (1974) (party to arbitration agreement cannot by use of certain artful language in the agreement escape the aegis of the Uniform Arbitration Act).  See also *Stop & Shop Cos.* v. *Gilbane Bldg. Co.*, *supra* at 329 (court may not order consolidated arbitration without an agreement therefor, even though it would result in more efficient management of the case).

Lastly, we note that Wexler makes no contention that the claim is not now ripe for arbitration.  The arbitration clause itself does not contain an exception for contingent claims, and the judge's action indicates that he thought that the issues were presently suitable for arbitration and that action on the motion should not be postponed.  See *Knolls Coop. Section No. 1, Inc.* v. *Hennessy*, 3 Misc. 2d at 222; *Maldonado* v. *PPG Indus., Inc.*, 514 F.2d at 617 (stay of third-party proceedings ordered without discussion of contingent nature of claims; the "claims for contribution . . . on whatever legal theory premised, are arbitrable at least until and unless it is otherwise decided by the arbitrator").  If the third-party complaint proceeds to trial, serious questions of claim and issue preclusion could arise which might render the right to meaningful arbitration nugatory and ar-

---

[8] Apart from the considerations discussed in the text, Wexler has raised no other basis in rule 14 with respect to United Electrical's position in the lawsuit which would merit refusal of the stay.

bitration once concluded imposes a necessary measure of finality. See Restatement (Second) of Judgments § 132 (Tent. Draft No. 7, 1980). Since the arbitrator must ultimately pass on the outer boundaries of what is arbitrable, we think it best to leave to him when and how to proceed on the reference.[9] The Superior Court, of course, retains the power to impose conditions on the stay, and to fashion appropriate orders (pertaining to discovery, witness availability, trial scheduling and the like) to protect the interests of other parties to the lawsuit.

The order denying a stay of the third-party action is reversed, and the case is remanded for further proceedings in accordance with this opinion.

*So ordered.*

---

[9] The arbitrator, who has considerable discretion in managing the case (see G. L. c. 251, § 5[a]; *Bay State York Co.* v. *Canter Constr. Co.*, 5 Mass. App. Ct. 192, 194 [1977]), may hold the matter until the town's claims underlying the third-party action are resolved, on the possibility that some or all of those claims might become moot as a result of settlement or trial.