Brassard, J.
BACKGROUND
The parties have disputes encompassing three written agreements through which they conducted their business. On February 2, 1998, the defendants brought a request for arbitration before the International Chamber of Commerce (“ICC”) pursuant to an *13 arbitration clause in a Joint Venture Agreement (“JVA”) between the parties.
On March 11, 1998, the plaintiff brought an action in this court for a declaratory judgment and a preliminary injunction enjoining the defendants from proceeding with the arbitration hearing before the ICC. The plaintiff asserted that a subsequent Purchase and Sale Agreement (“PSA”) between the parties terminated the JVA and therefore arbitration before the ICC is improper. On March 31, 1998, this court restrained the defendants from proceeding with arbitration before the ICC. The court concluded that plaintiff had a strong likelihood of success on the merits.
The defendants answered with counterclaims, including count I and count V. Count I alleges breach of contract and count V alleges breach of M.G.L.c. 93A.
The defendants also initiated court action on April 16, 1998 against the plaintiff in Brazil.
Presently before the court are plaintiffs motions (1) to stay and compel arbitration before the American Arbitration Association (“AAA”)[1] as to count I of defendant’s counterclaim; (2) to dismiss for failure to state a claim upon which relief may be granted as to count V of defendant’s counterclaim; and (3) to enjoin defendants from proceeding with litigation in Brazil and to compel arbitration before the AAA.
For the reasons which follow, the plaintiffs motion to stay and compel arbitration as to count I of defendant’s counterclaim is ALLOWED, plaintiffs motion to dismiss count V of defendant’s counterclaim is DENIED, and plaintiffs motion to enjoin the Brazilian claim and compel arbitration is ALLOWED.
DISCUSSION
A. The allegations
The facts alleged in the claim are as follows:
In 1992 defendant Computel and plaintiff Corn-verse, which was then BTI,[2] started doing business. Computel agreed to serve as BTI’s exclusive distributor in Brazil for telecommunications equipment and systems pursuant to a Master Distribution Agreement ("MDA”).
The MDA contains terms under which the equipment, voice messaging systems and information processing equipment, and software are controlled. The MDA details the technical support requirements imposed on BTI and Computel and includes an express warranty from BTI. Sections 7.2 and 7.3 provide the terms of BTI’s warranty on the equipment. BTI warrants “that Computel shall acquire good title to the Equipment. . . free and clear of all liens and encumbrances” and warrants that “the Equipment delivered hereunder will be free from material defects in workmanship . . . and any item of Equipment requiring repair or replacement will be fixed or replaced by BTI . . .” These provisions are to be BTI’s sole obligation and Computel’s sole remedy for breach of warranty.
Section 7.4 governs the parties’ rights and obligations concerning any software defects. It provides that all software will substantially conform to published standards and that, if any software deficiencies affect service, then BTI will correct the defect or provide an “adequate work-around” to solve the problem.
Section 28.7 of the MDA provides that all disputes “arising out of or related to” the Agreement shall be submitted to the AAA:
Any controversy or claim arising out of or related to this [Master Distribution] Agreement shall be submitted to binding arbitration in accordance with the then prevailing Rules of the American Arbitration Association
As BTI’s exclusive distributor, Computel established a strong position with some of Brazil’s largest telephone companies. Computel was so successful as the distributor that by 1995 BTI’s products had become the dominant telecommunications equipment used by Brazilian telecommunications companies. In 1995 BTI initiated discussions with Computel and later in the year the two became partners in a newly formed joint venture, C&BT. On November 1, 1995, the parties entered into the Joint Venture Agreement (“JVA”). C&BT was to serve as the vehicle through which Computel and BTI together conducted business in Brazil. That business was to consist of the marketing, selling and servicing of advanced telecommunications systems. C&BT received an assignment of Computel’s rights and duties as distributor under the MDA.
Pursuant to the Section 10.1 of the JVA, BTI agreed that during the term of the agreement it would not “incorporate or organize any other company or entity, whether within or without Brazil, or otherwise participate or engage in any activity which will compete directly or indirectly with [C&BT] business in Brazil or which will otherwise conflict with C&BT’s interest except with the approval of the Board of [C&BT].”
In the spring of 1997, without informing Computel (its joint venture partner), BTI began exploring a merger with Comverse Technology, Inc., a company with whom it widely competed around the world. BTI than began discussions with Computel and fraudulently induced Computel to dissolve the joint venture under the premise that differences in business cultures made it preferable to continue their relationship through a distribution agreement rather than a joint venture. BTI sought to dissolve the joint venture without informing Computel of its merger intentions with Comverse because it knew or ought to have known that its business objectives in Brazil were no longer consistent with the duties it owed to the joint venture. BTI attempted to extricate itself from its joint venture contractual and fiduciary obligations by failing to disclose material information to Computel concerning its merger objectives.
*14 On June 1, 1997, BTI and Computel signed the Purchase and Sale Agreement (“PSA”) in which BTI sold its shares in C&BT to Computel. The PSA also contained a clause which expressly terminated the JVA. Simultaneous with the termination, C&BT re-assigned to Computel the rights and duties under the MDA.
In August the “definitive" merger between BTI and Comverse was publicly announced. On January 14, 1998, the merger was consummated and BTI formally became integrated into Comverse.
The defendants assert in Count I that BTI (now Camverse) was obligated under the JVA[3] to provide technical assistance and development capabilities to conform BTI products to the market and Brazilian specifications; to assist and cooperate in the preparation of any proposal book or tender document and provide reasonable assistance in the marketing and promotion of BTI products and systems in Brazil on behalf of the joint venture; to abide by the terms of the exclusive distribution agreement that BTI had previously entered into with Computel which agreement was assigned to the joint venture; and to develop efforts in the United States that would maintain BTI’s competitiveness and the applicability of its products in Brazil.
Defendants also allege that BTI and Comverse have delivered non-conforming, incomplete and malfunctioning equipment to customers of Computel and the joint venture, that they have failed to support, repair and/or replace malfunctioning features of said equipment, and have improperly invoiced Computel and the joint venture. It is further alleged that BTI and Comverse have failed to provide competent and sufficient technical assistance or development capabilities, and have failed to make reasonable and necessary efforts to maintain the competitiveness and applicability of products offered in Brazil.
In sum, the parties signed the MDA in November 1992 and agreed that any disputes relating to that agreement would be brought before the AAA; they signed the JVA in November 1995 and agreed that disputes relating to that agreement would be brought before the ICC; and the parties signed the PSA in June 1997 which terminated the JVA and did not specifically provide for a dispute resolution clause but reassigned the right and obligations under the MDA.
Defendants contend that the JVA is still in force. They take the position that the PSA is invalid because they were fraudulently induced to enter into it.
The plaintiff maintains that the JVA is terminated as this court preliminarily concluded when it issued a preliminary injunction. Further, plaintiff argues that the claims articulated in count I of defendants’ counterclaim relate to the MDA which is in force, requiring that this dispute be brought before the AAA.
B. Motion to Stay and Compel Arbitration, count I.
By its adoption of the Uniform Arbitration Act, G.L.c. 251, Sections 1 to 19, Massachusetts has expressed “a strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial disputes.” Town of Danvers v. Wexler Constr. Co., 12 Mass.App.Ct. 160, 163 (1981). The Arbitration Act establishes that “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ...” Carpenter v. Pomerantz, 36 Mass.App.Ct. 627, 632 (1994). Counterclaims should be addressed through arbitration to the extent that they fall within the scope of the arbitration provision. Town of Danvers, 12 Mass.App.Ct. 160. Where parties do not dispute that they have a valid arbitration agreement and that the issues raised in the court action are subject to arbitration, the court should stay the litigation of those issues and compel arbitration. Id. at 166.
In order for the court to compel arbitration, there must be a valid arbitration clause and the claims (or counterclaims) must fall within the scope of the clause. M.G.L.c. 251, the Massachusetts Arbitration Act, governs arbitration of commercial disputes in this state. Sec. 1 provides that a written agreement to arbitrate shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. Sec. 2a allows the party aggrieved by the refusal of the other party to proceed to arbitration to apply to the Superior Court for an order directing the parties to proceed to arbitration.
The MDA contains the terms under which the equipment and software are controlled. All of defendants’ claims in Count I appear to touch upon the plaintiffs telecommunications products, equipment and service, in some manner.
Section 28.7 of the MDA provides that all disputes “arising out of or relating to" that agreement shall be settled by arbitration before the AAA. This is a valid, undisputed and broad arbitration clause. This court concludes that the defendant’s allegations in count I fall within the scope of the MDA’s arbitration clause. For the above reasons, the plaintiffs motion to stay and compel arbitration in the AAA is ALLOWED.
C. Standard for Dismissal Pursuant to 12(b)(6)
WTien evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well pleaded factual allegations of the complaint, as well as any inference which can be drawn therefrom in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). “The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the [nonmoving] party can prove no set of facts in support of his claim which would entitle him to relief.” Nader *15 v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
D. Motion to Dismiss, CountV
The Massachusetts Consumer Protection Act, G.L.c. 93A, prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. The law was enacted to ensure proper disclosure of relevant information in commercial transactions and to provide consumers and, in limited circumstances, business persons, with a more equitable position in commercial transactions. Commonwealth v. DeCotis, 366 Mass. 234 (1974). Whether conduct falls within the scope of M.G.L.c. 93A depends on facts and circumstances of each case.
A different standard applies to business plaintiffs which takes into consideration the “rough and tumble” of the commercial world. Levings v. Forbes, 8 Mass.App.Ct. 498, 504 (1979). Sec. 11 is not intended to apply to transactions within a business entity, like a partnership, but rather to dealings between legally separate “persons” engaged in arm’s length transactions. Newton v. Moffie, 13 Mass.App. 462, 466-67 (1982). Excluded from M.G.L.c. 93A application are “private” relationships, such as employer and employee, and partners in a partnership or a joint venture. A private grievance is one which does not occur in the ordinary conduct of any trade or commerce. Zimmerman v. Bogoff, 402 Mass. 650, 662-63 (1988). In count V, defendant Computel alleges that BTI (Com-verse) knowingly and willfully engaged in conduct constituting unfair and deceptive acts which have caused Computel substantial damage. BTI (Comverse) argues that M.G.L.c. 93A does not apply because the parties were joint venture partners and that defendant has an alternative avenue of relief in the form of breach of fiduciary duty.
The alleged facts are complex. The court is unable to conclude that Computel can prove no set of facts which would entitle it to relief under c. 93A. For the above reasons, the motion to dismiss is DENIED.
E. Motion to compel arbitration of the Brazilian claim
The defendants filed a claim in Brazil against the plaintiff. This claim is titled Innominate Precautionary Measure with Preliminary Petition (“Brazilian Petition”). The Brazilian Petition contains allegations similar to defendants’ counterclaim in this case. The Brazilian Petition alleges that BTI (now Comverse) delivered equipment with imperfections or defects, that it failed to provide technical assistance, and improperly invoiced Computel for the nonconforming equipment. All of the claims appear to relate to “equipment and service” which is controlled by the MDA, and thus fall within its arbitration clause.
In Scherk v. Alberto-Culver Co., 417 U.S. 506 (1973), the court stated:
uncertainty will almost inevitably exist with respect to any contract touching two or more countries, each with its own substantive laws and conflict-of-laws rules. A contractual provision specifying in advance the forum in which disputes will be litigated and the law to be applied is, therefore, an almost indispensable precondition to achieving the orderliness and predictability essential to any international business transaction. Furthermore, such a provision obviates the danger that a dispute under the agreement might be submitted to a forum hostile to the interests of one of the parties . . .
Id. at 516. The parties in this case included forum selection and choice of law clauses in the MDA. Accordingly, the plaintiffs motion to compel arbitration of the Brazilian Petition’s claims before the AAA is ALLOWED.
F.Motion to Enjoin Brazilian Litigation
As an exercise of its judicial discretion, a court may restrain a parly from prosecuting a suit in another state or a foreign country where it is required to prevent a manifest wrong and injustice, or to ensure proper application of the laws that should govern the rights of the parties. Carson v. Dunham 149 Mass. 52, 53 (1889). Lydia Pinkham Medicine Co. v. Gove, 298 Mass. 53, 66 (1937).
Federal courts have repeatedly refused to permit a party to a contract to circumvent an arbitration clause by commencing litigation in a state court. Commonwealth Edison Co. v. Gulf Oil Corp., 400 F.Sup. 888, 890 (1975); Burger Chef Systems, Inc. v. Baldwin, Inc., 365 F.Sup. 1229, 1233-34 (1973). In Sumitomo Corp. v. Parakopi Co., 477 F.Sup. 737, (1979), the court held that this principle applies with equal force to international situations. Sumitomo at 742.
Comity is “the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience ...” Sumitomo at 741-42, citing Hilton v. Guyot, 159 U.S. 113, 164.
In deciding whether to accord comity to a decision of a foreign court, a forum court must determine whether the foreign court’s decision would violate the laws and policies of the forum nation or state. Sumitomo at 742, citing Hilton at 202-03.
The laws and policies of both the United States and the Commonwealth, 9 U.S.C. and M.G.L.c. 251 respectively, strongly favor enforcement of arbitration clauses, including those in international contracts. Sumitomo at 742 (enforcing an international agreement and arbitration clause under the Federal Arbitration Act and the Convention on Recognition and Enforcement of Foreign Arbitration Awards).
This court recognizes that an injunction prohibiting the defendants from proceeding with their claims in the Brazilian court constitutes some interference with the Brazilian judicial process. The contractual rights *16 and obligations of the parties mandates that limited interference in this case. The parties expressly and clearly agreed to arbitration of their disputes.
The motion to enjoin defendants from proceeding with the Brazilian litigation is ALLOWED.
ORDER
It is ORDERED that plaintiffs motion to stay and compel arbitration before the American Arbitration Association as to count I of the defendants’ counterclaim is ALLOWED. The motion to dismiss as to count V of the defendants’ counterclaim is DENIED. The motion to enjoin the defendants from proceeding with the litigation in Brazil and to compel arbitration is ALLOWED.

On March 11, 1998, plaintiff filed a demand for arbitration before the AAA, in accordance with Section 28.7 of the Master Distribution Agreement. Comverse, among other things, seeks to recover more than $12,000,000 allegedly owed by Computel under the MDA

 BTI was a manufacturer and software developer of sophisticated voice messaging and information processing telecommunications systems. It merged with and transferred its assets to Comverse on January 14, 1998.

While defendants assert that their claims under count I arise out of the JVA the substance of these claims appears to fall under the provisions set forth in the MDA. Furthermore, in its order dated March 31, 1998 on plaintiffs motion for a preliminary injunction, this court preliminarily concluded that the JVA had been terminated. To the extent that the defendants assert that the JVA is still in force, the defendants are not precluded from raising that issue before the appropriate forum or fora.