Fabricant, J.
INTRODUCTION
This is an action to confirm an arbitration award, arising from an agreement through which the parties provided for the termination of their “domestic partnership.” The parties have submitted the case on a stipulation of facts. Based on the facts stipulated, having considered the memoranda and oral arguments of counsel, the Court concludes that the plaintiff is entitled to confirmation of the arbitrator’s award.
BACKGROUND
The parties, Stephen Goldfinger and David Arndt, entered into an agreement dated August 15,1994. The agreement begins: “The following is a recitation of the facts which are in consideration of, and the underlying reasons for, the promises contained in the following Agreement.” The facts recited include that the parties met in 1983 and formed “a domestic partnership which would last until July of 1994.” During that time they “cohabited in various residences,” and “collected a significant amount of tangible personal property, much of which was paid for by Stephen [Goldfinger].” The agreement recites that Goldfinger is older and was more advanced in his profession, and for that reason he “paid for much of their living, traveling, and entertainment expenses during this time before and while David was preparing for a career in medicine.” The parties “expected that ... at such time as David’s medical education was complete and David was employed in the field of orthopaedic surgery, that the balance of this arrangement would shift,” and that “Stephen’s long range financial security was predicated on David assuming a parallel burden of financial support.” The agreement goes on to recite that the parties “have mutually agreed to terminate their domestic partnership," and they have entered into the agreement “in order that the termination of their domestic partnership may be smooth, friendly, and unfettered by disputes over David’s financial arrangements with Stephen and the Parties’ respective ownership of tangible personal property.”
There follow a series of provisions regarding division of tangible personal property, payment of credit card debt, ownership of real estate, payment of support, life insurance, and access to pets. Of most economic significance, it appears, is a provision that David Arndt will pay Stephen Goldfinger a percentage of his income for a period of fifteen years, subject to certain limitations and exceptions.
The agreement provides mechanisms for resolution of any disputes arising under it. First, the parties will engage in mediation with a mediator chosen in a manner provided. If that fails, they will proceed to arbitration “in accordance with the rules of the American Arbitration Association," the result of which “shall be final and binding.”
In October 1985, David Arndt, the defendant here, filed an action against Goldfinger in the Probate and Family Court, Suffolk Division, seeking a declaratory judgment “that the agreement is null and void and without legal effect.” Arndt alleged that when he informed Goldfinger of his intent to terminate the relationship, Goldfinger, “an experienced psychiatrist, began to exert significant pressure on [him] to come to ‘financial terms,’ ” taking advantage of “the fragility of [Arndt’s] mental condition,” which arose from long work days and from depression caused by deaths of loved ones. Arndt further alleged that Goldfinger’s *691 attorney drafted the agreement, that Arndt executed it without counsel and without financial disclosure, and that the “recitation of consideration” set forth in it "is erroneous and fraudulent.” Based on these allegations, Arndt’s complaint alleged that the agreement was “the product of duress and coercion,” “unfair and unreasonable,” and “unconscionable,” that its provisions “violate public policy,” that “(t]here was a failure of consideration,” that it “contains material misrepresentations of fact,” that Goldfinger “is Unjustly enriched” by its provisions, and that “there is no statutory authority for such a grant of maintenance or support between two financially-independent, unrelated, and unmarried persons.”
Goldfinger responded with a motion to dismiss the Probate Court action, arguing both that the complaint failed to state a claim on which relief may be granted, and that the Probate Court lacked subject matter jurisdiction because of the arbitration provision. On the latter point, Goldfinger pointed out in his memorandum that G.L.c. 251, § 1, makes arbitration provisions “valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract,” and that §2 of that statute confers on the Superior Court exclusive jurisdiction either to compel or to stay arbitration. Based on these provisions, he argued that the Probate Court lacked jurisdiction over the subject matter of the action.
The Probate Court (Nesi, J.), allowed the motion to dismiss, explaining its reasons in a memorandum of decision dated February 8, 1996. The Court cited Quirk v. Data Terminal Systems, Inc., 379 Mass. 762 (1980), in which the Supreme Judicial Court held that an arbitration provision in a written agreement is an agreement in itself, severable and enforceable even if grounds exist for rescission of the agreement in which the provision appears. Thus, in the absence of an allegation of grounds for rescission of the arbitration provision in particular, an overall challenge to the validity of the agreement as a whole is subject to the arbitration provision, and must be resolved by arbitration, rather than by any court. The Probate Court observed that “Plaintiffs complaint does not direct any allegations to the provision for arbitration specifically and therefore the allegation should be considered as attacking the contract as a whole.” Thus, the Probate Court concluded, Arndt’s claims for rescission of the contract were subject to the arbitration provision, and could be addressed only before an arbitrator.
The next event, according to the parties’ stipulation, was an unsuccessful effort at mediation in November of 1998.[1] Thereafter, on April 1, 1999, Goldfinger served on Arndt, and filed with the American Arbitration Association, a demand for arbitration, describing the nature of the dispute as “the enforceability of a contract between the parties.” Arndt responded to the demand by a letter from the same lawyer who had represented him in the Probate Court, stating that, “In response to said claim, the Respondent states that the putative agreement sought to be enforced by the Claimant is not a valid and binding contract between the parties as will be demonstrated by the evidence introduced at the time of the hearing. The Respondent specifically reserves all his rights and defenses until such time as a formal hearing is convened.”
The parties, through counsel, proceeded with the pre-hearing aspects of the arbitration process. Correspondence between counsel reflects the scheduling of depositions of both parties, as well as written discovery requests served by Arndt’s counsel on Goldfinger’s counsel, and communications regarding hearing dates convenient to the parties. By letter to the AAA administrator dated July 7, 1999, Arndt’s counsel proposed specified dates in October as “convenient for the parties and attorneys,” and requested confirmation “that the matter is scheduled for Arbitration on those dates.” Thereafter, however, Arndt changed his position; in a letter to the AAA administrator dated September 8, 1999, Arndt’s counsel stated:
With regard to the above referenced matter, David Arndt has determined that he does not wish to proceed with arbitration proceedings at this time. I have so advised Attorney Hibbard who is representing Dr. Goldfinger. I would appreciate it if you would advise the arbitrator, David Hoffman, of this development.[2]
By letter dated October 22, 1999, the AAA administrator notified counsel for the parties of the scheduling of a hearing for November 18, 1999, before arbitrator Hoffman.[3] On January 18, 2000, the administrator transmitted copies of the arbitration award, dated January 14, 2000, to counsel for the parties. That award, consisting of four single-spaced pages, recites the events of the hearing on November 18, 1999, and a telephone conference on November 30, 1999, and then addresses each of the issues presented to the arbitrator. According to the award, ”[o]nly Dr. Goldfinger and his counsel attended the hearing; the AAA received notice from Dr. David Arndt . . . that he did not plan to attend the hearing.” Dr. Goldfinger, according to the award, presented his own testimony, along with exhibits and a hearing memorandum. The AAA then scheduled the November 30, 1999, telephone conference, with notice to the parties, but “(a]gain Dr. Arndt did not participate.’’[4]
The arbitrator proceeded to make findings based on the evidence presented at the hearing. He found, in substance, that the agreement was not in violation of public policy, the product of duress, or unfair or unconscionable, that it was supported by adequate consideration, that it did not result in unjust enrichment, that Arndt had agreed to the facts as recited in the agreement, and that any factual errors in it did not "go[ ] to the heart of the exchange of promises set forth in it.” The arbitrator further found that Arndt had breached the agreement, both by failing to make the *692 various payments and exchanges required under it, and by filing his action in the Probate Court, as well as another action in the Bankruptcy Court.[5] The arbitrator ordered Arndt to pay Goldfinger’s costs and attorneys fees incurred in connection with those actions, as well as to comply with the support provisions and his various other obligations under the agreement.
By letter from his attorney dated February 4, 2000, Goldfinger demanded that Arndt comply with the arbitration award. On April 6, 2000, Goldfinger filed this action to confirm the arbitration award, alleging that Arndt “has failed and refused to so comply.” Arndt responded, through new counsel, with a “Motion and Memorandum of Law in Opposition to Confirmation of the Arbitration Award.” Arndt did not, and has not at any time, filed an application to vacate the arbitration award, pursuant to G.L.c. 251, §12.
DISCUSSION
Goldfinger’s complaint seeks relief under G.L.c. 251, §11, which provides:
Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacation or modifying or correcting the award, in which case the court shall proceed as provided in sections twelve and thirteen.
Here, it is undisputed that no request to vacate, modify or correct the arbitration award has been filed within the statutory time limits. Thus, under the plain terms of the statute, the Court must confirm the award, as requested in Goldfinger’s complaint.
In opposition to confirmation, Arndt takes the position, in substance, that the award is a nullity because he did not attend the arbitration hearing, never having been ordered to proceed to arbitration pursuant to G.L.c. 251, §2(a). That section provides:
A party aggrieved by the failure or refusal of another to proceed to arbitration under an agreement described in section one may apply to superior court for an order directing the parties to proceed to arbitration. If the opposing party denies the existence of the agreement to arbitrate, the Court shall proceed summarily to the determination of the issue so raised and shall, if it finds for the applicant, order arbitration; otherwise, the application shall be denied.
Despite the statute’s use of the permissive “may,” Arndt argues that Goldfinger was required to apply for a court order, upon learning of Arndt’s intention to absent himself from the hearing, and that Goldfinger’s failure to do so prevents confirmation of the award.
Arndt offers no case law supporting his interpretation of the statutory provision, and the Court has found none. To the contrary, the cases read c. 251 as “expressing a strong public policy favoring arbitration as an expeditious alternative to litigation.” Danvers v. Wexler Construction Co., Inc., 12 Mass.App.Ct. 160, 163 (1981), and cases cited. Accordingly, “the arbitration procedure, when selected by the parties to a contract, should be speedy and not subject to delay and obstruction in the courts.” Quirk v. Data Terminal Systems, 379 Mass. at 767. The interpretation Arndt proposes, contrary to this strong legislative policy, would empower a person in his position, despite full and adequate notice and active participation in the pre-hearing stages, to call the arbitration procedure to a screeching halt merely by announcing an intention to absent himself from the hearing. His opponent would then have to incur the expense and delay of bringing suit, despite a contractual right to avoid doing exactly that.
Arndt invokes a countervailing public policy against the unfairness of what he labels “ex parte arbitration proceedings.” He acknowledges AAA rule R-31, under which “unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement.”[6] He attempts to avoid the obvious impact of this rule by invoking its first clause, asserting that §2(a) of c. 251 “law provides to the contrary.” The argument is circular; without authority for his reading of that section, he can hardly invoke it as a statutory bar to application of the rule. Moreover, Arndt’s theory ignores the provision in the fourth sentence of §5 (a) of c. 251 that “(t]he arbitrators may hear and determine the controversy upon the evidence produced notwithstanding the failure of a party duly notified to appear."[7]
Arndt next argues that “the agreement in question does not provide for ex parte arbitration.” As noted supra, however, the agreement provides for arbitration “in accordance with the rules of the American Arbitration Association.” Thus, the parties adopted and incorporated Rule R-31, under which the arbitrator proceeded.
The policy concern Arndt raises is not to be dismissed; obviously, full participation of all parties in an arbitration hearing is preferable. No unfairness occurs, however, when a hearing proceeds in the absence of a party who has agreed to arbitrate, but fails to attend after due notice. A party who genuinely disputes his obligation to arbitrate is entitled to an opportunity for judicial resolution of that dispute before the arbitration hearing occurs. The statute provides such an opportunity, however, in §2(b), which authorizes the Superior Court, “upon application,” to “stay an arbitration proceeding commenced or threatened if it finds that there is no agreement to arbitrate.” Arndt, despite his position that no valid agreement exists, and despite his undisputed notice of the arbitration proceeding, never made such application, choosing instead simply to absent himself from the hearing. Both the statute and the AAA rule unequivocally establish the consequence of that choice: the *693 hearing proceeds without the absent party, and the arbitrator decides based on the evidence presented.
The practical effect of Arndt’s position here warrants comment. Were his arguments to prevail, and confirmation of the award to be denied on the grounds he presents, Goldfinger would be in the position of initiating the arbitration process all over again, beginning with an action under c. 251, §2(a), to compel Arndt’s participation. The outcome of that action would be dictated by the preclusive effect of the Probate Court’s ruling of law that Arndt’s claims for rescission are subject to the arbitration provision. See Jarosz v. Palmer, 49 Mass.App.Ct. 834, 836-37 (2000).[8] Goldfinger would be entitled to a court order compelling Arndt to “proceed to arbitration,” as provided in c. 251, §2(a). Such an order would not determine whether Arndt would attend the arbitration hearing, or absent himself once again, but would reopen that choice for him, along with his opportunity thereafter to file an application to vacate or to modify or correct the resulting award pursuant to c. 251, §§12, 13. Thus, Arndt’s present position maybe seen as, in substance, an attempt to avoid the consequences of the procedural choices he previously made, and to obtain an opportunity to reconsider- those choices. Arndt has no right to impose on Goldfinger the delay and expense that would result.
CONCLUSION
For the reasons stated, it is hereby ORDERED that JUDGMENT shall enter confirming the arbitration award.

Neither the stipulation nor anything else before the Court makes any reference to any appeal from the Probate Court’s dismissal of Arndt’s action.

The stipulation does not indicate when or how Mr. Hoffman was designated as the arbitrator, or what role, if any, Arndt or his attorney had in the selection. The complaint alleges that the arbitrator was “duly selected by the parties.” Arndt has not denied this allegation; his memorandum states that his former counsel “engaged in discussions with Goldflnger’s counsel regarding the selection of an arbitrator and dates for an arbitration hearing.”

Goldfinger appends to his memorandum a copy of a cover letter from the AAA administrator to the parties, apparently sent with the notice of arbitration, stating; “The arbitrator has ruled that this matter is arbitrable, and will proceed to hearing. We note that Dr. Arndt has not responded to any communication from the AAA and we have been advised by his former counsel. . . that he elects not to participate in the arbitration. Per section R-31 of the Rules, the arbitrator is proceeding with the arbitration.” Goldflnger’s memorandum states that “on two subsequent occasions Dr. Arndt took part in telephone conferences relative to the hearing.” The stipulation provides no information on this point.

The arbitration award recites that “Dr. Arndt, a neurosurgeon, later informed the AAA that he had not participated in the hearing because he could not afford the arbitration fees. The AAA informed Dr. Arndt of its procedures for requesting a waiver of arbitration fees on the basis of inability to pay, but Dr. Arndt failed to comply with those procedures.”

The stipulation provides no further information on this subject. Goldflnger’s memorandum indicates that, after the dismissal of the Probate Court action, Arndt filed for bankruptcy, but his petition was dismissed as “an impermissible attempt to avoid a two-party dispute."

Although the parties have not provided the Court with a copy of the cited rule, their memoranda offer identical quotations of its text.

On inquiry at oral argument, Arndt suggested that this sentence applies only when a party fails to appear after a hearing has begun but been adjourned to a subsequent date. For this limitation he points to the previous sentence, which authorizes arbitrators to “adjourn the hearing from time to time” and to “postpone the hearing”; he thus reads the fourth sentence as limited to instances in which the authority provided in the third sentence has been exercised. Neither the language nor the overall effect of the section supports this suggestion. Section 5(a) consists of five sentences, each addressing distinct procedural aspects of arbitration hearings. The provisions of each tend to empower arbitrators to manage the proceedings expeditiously, in accord with the agreement of the parties. Nothing in the section, read as a whole, lends any support to the notion that the effect of any one sentence is limited to the instances referred to in any other sentence.

Arndt points out that the Probate Court lacks jurisdiction either to compel or to stay arbitration, since c. 251 grants those powers exclusively to the Superior Court. The Probate Court’s lack of authority to grant those particular forms of relief, however, does not undermine the preclusive effect of its legal ruling. Having initiated the action in the Probate Court, Arndt can hardly be heard to say that it lacked jurisdiction to determine the question of law presented to it.