MacDonald, D. Lloyd, J.
After hearing in which counsel for all parties were present, the Defendants’ motion is ALLOWED.
Pertinent Background
The Plaintiff Van Emden Management Corporation (“Plaintiff’ or “Van Emden”) is a property manager for several commercial and residential properties in Massachusetts. In January 2005 it brought this action against the Defendant Marsh & McClennan Companies, Inc. and Marsh, Inc. (collectively, “Marsh”) and six insurance companies (collectively, the “Insurance Company Defendants”). Van Emden did so on its own behalf and on behalf of two classes of similarly situated plaintiffs. The first class Van Emden seeks to be certified is pursuant to G.L.c. 93A, §11 (the “93A Subclass”). The other class is pursuant to Mass.R.Civ.P. 23 (the “Non-93A subclass”).
The factual allegations rest on purported intersecting schemes by Marsh (described as the largest commercial insurance brokerage house in the world) and the Insurance Company Defendants. In the first of the alleged schemes Marsh is said to have taken kickbacks in the form of “contingent commissions” from the Insurance Company Defendants for placing commercial insurance business with Marsh’s customers (one of which was the Plaintiff). The second scheme is described as a bid-rigging swindle whereby Marsh solicited and obtained fictitious high quotes from insurance companies to protect favored insurance companies, including the Insurance Company Defendants.
The complaint sounds in breach of fiduciary duty against Marsh, violation of the Massachusetts antitrust statute, G.L.c. 93, §4 (all defendants), G.L.c. 93A, §11 [predicated on violations of G.L.c. 176D, §3(8)] (the Insurance Company Defendants), G.L.c. 93A, §11 [predicated on alleged unfair competition and unfair and deceptive acts] (all defendants), civil conspiracy (all defendants) and injunctive relief (all defendants).
The Plaintiff filed the instant complaint in January 2005. However, as early as August 2004 a class action complaint involving substantially identical allegations of fact was filed against Marsh in the federal court in the Southern District of New York. Before the present action was filed, eight additional class actions were filed against Marsh in various federal courts. By March 2005 nine other federal class complaints were entered against Marsh and various insurance company defendants, which were alleged (as the Insurance Company Defendants here are) to have conspired with Marsh in perpetrating the schemes noted above. As of the date of the hearing in this matter, all but one of the Insurance Company Defendants had been named as a defendant in one or the other of the other pending federal class actions.
All the above litigation arose from disclosures emanating from an investigation by the office of the Attorney General of the State of New York, Eliot Spitzer (“Spitzer”). And in October 2004 Spitzer filed a civil fraud complaint against Marsh in the New York courts resting on the “contingent commission” and “bid-rigging” allegations underlying the Van Emden complaint. On January 30, 2005 Spitzer announced a settlement with Marsh wherein an $850 million settlement fund was set up for payment to the victims of Marsh’s alleged schemes (the “New York Settlement”). The deadline for the filing of claims in the New York Settlement is September 20, 2005.
Meanwhile, in the wake of the filing of the various federal class action complaints, the Federal Judicial Panel on Multi-District Litigation ordered that pending and future class actions alleging the Marsh schemes be consolidated in the District of New Jersey before U.S. District Judge Faith Hochberg (the “MDL Litigation”) .[1] Since her designation as the MDL judge, Judge Hochberg has issued orders that, inter alia, designated lead counsel, approved the formation and constitution of a plaintiffs executive committee and established discovery and briefing schedules. Pursuant to the latter, close of discovery in the MDL Litigation is set for August 31, 2006.
*80 Merits of the Issue Before the Court
The Defendants have moved to stay the present action. They urge that in light of the MDL Litigation (and to a lesser extent, the New York Settlement) considerations of judicial economy compel it. The Plaintiff agrees that reasons of judicial economy should guide the Court’s decision, but the Plaintiff submits that the unique aspects of 93A relief, both from a substantive law perspective and procedurally for class certification, make the Massachusetts state court forum the most appropriate one for the resolution of the issues raised in its complaint. (The Plaintiff also cites the state interest in having Massachusetts courts interpret G.L.c. 176D’s application to the facts of the alleged scheme as a compelling reason to permit the litigation to go forward here.)
The decision whether to grant a stay in these circumstances requires a judgment that balances the judicial interest in the efficient disposition of cases, principles of comity and the substantive interests underlying the causes of action in the proceeding being sought to be stayed. Danvers v. Wexler Const. Co., Inc., 12 Mass.App.Ct. 160, 164 (1981), citing Landis v. North American Co., 299 U.S. 248, 254-55 (1936). How the efficient disposition of cases “can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.” Landis v. North American Co., 299 U.S. 248, 254-55 (1936). See also Travenol Laboratories, Inc. v. Zotal, Ltd., 394 Mass. 95, 97 (1985); Consolidated Ordnance Co. v. Marsh, 227 Mass. 15, 20 (1917) (two concurrent suits brought respectively in a District Court of the United States and in a court of equity of the Commonwealth against the same defendant and for the same cause of action).
On the facts before the Court, the balance appears strongly weighted toward an order to stay. In the Court’s judgment, to permit the litigation here to go forward would disserve the public interest in fair and efficient case management and would compromise principles of comity.
The most significant factor, in the Court’s estimation, is the nature and status of the MDL Litigation in the federal court in New Jersey. The MDL Litigation represents a national forum for the disposition of the grave allegations against Marsh and (at this point, all but one of) the Insurance Company Defendants.
The factual allegations in the Van Emden complaint are identical in substance to the federal class actions that have been consolidated before Judge Hochberg. (Without disagreement by Plaintiffs counsel, it was asserted by the defendants at the hearing on the present motion that the schemes at issue were all hatched and thereafter overseen by Marsh’s senior corporate management, who were physically located at Marsh’s headquarters in New York Cily.) Moreover, the theories of relief advanced, whether under federal (civil RICO) or state (unfair and deceptive practices) claims, are in essence similar to the c. 93A, §11 relief sought by Van Emden.[2]
The Court is mindful that the SJC has emphasized the strong state interest in ensuring that 93A’s expansive class certification standard be respected in practice. 93A “was designed to meet a pressing need for an effective private remedy for consumers, and . . . traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice." Aspinall v. Philip Morris Co., Inc., 422 Mass. 381, 392 (2004).
However, here there appears to be no such risk. As noted above, procedural orders have entered in the MDL Litigation that clearly demonstrate that the MDL Litigation is being diligently managed by the presiding federal judge. Thus, this is not a situation where substantial Massachusetts-based interests would be held in limbo in deference to a stalled proceeding in another forum. Moreover, the effective enforcement of rights arising under G.L.c. 93A is a routine occurrence in the exercise of the federal courts’ diversity jurisdiction. See, e.g., Cambridge Plating Co., Inc. v. Napco, Inc., 85 F.3d 752, 769 (1st Cir. 1996). And there is no bar, of course, to 93A claims being pressed in the MDL Litigation (as the Court understands they already are).
Furthermore, if the Court were to deny the stay, inconsistent rulings on issues of discovery, class certification and other substantive matters would be likely. That circumstance would disrupt the orderly disposition of the national litigation and generate substantial economic costs for all the parties involved.
By way of illustration, at the motion hearing in this matter, counsel informed the Court that the document inventory and index in the MDL Litigation already contain over a million documents. If discovery orders at odds with each other were to issue from multiple courts under such circumstances, acute (and unnecessary) hardship to the parties would be caused. Further, the fact of such conflicting orders would (also unnecessarily) burden the courts then exercising concurrent jurisdiction as such conflicts would fuel additional motion practice before those courts.
In a matter like this that involves substantial commercial interests, the Court looks, as well, for guidance from decisions of the Business Litigation Session of the Superior Court. No decision precisely paralleling the case before the Court was found, but in an analogous setting that arose under Mass.R.Civ.P. 12(b)(9), Judge van Gestel addressed a situation of competing federal and state actions in a manner instructive to the resolution of the issues here. Seidman v. Central Bancorp, Inc., 2003 WL 369678 (Mass.Superior) (February 3, 2003) (15 Mass. L. Rptr. 642).
In that case, despite the circumstance that the express terms of Rule 12(b)(9) did not apply because the cases at issue were not all state cases, the Seidman court noted that “[t]his is a classic situation for which Mass.R.Civ.P. 12(b)(9) was adopted.”This was because *81 “aside from perhaps inconsequential issues about some additional claims and parties in each case, the thrust of all three actions is essentially identical.” Id.
Judge van Gestel ordered the state action stayed because to do otherwise, he ruled, would “set up the potential for differing declarations by two separate judges, after duplicate hearings or trials, on identical issues of facts and law . . . [TJhere certainly is no reason to proceed further with [the state] actions until there is some indication — which there is absolutely none now — that the matters are not moving forward in the Federal Court.” Id. The facts before the Court here compel a similar result.
In this time of increasingly rapid communication and flow of information and goods and services across state borders, it is to be anticipated that litigation will increasingly arise in multiple forums. Under such circumstances, it is especially important that the scarce judicial resources of the Commonwealth be applied in a manner that maximizes the protection and validation of substantively significant interests. Those interests are best served by staying further action on the Van Emden complaint.
ORDER
The present matter is stayed pending disposition of In re Insurance Brokerage Antitrust Litigation, MDL No. 1663, Civil Action No. 04-5185 (FSH) (USDC D.N.J.), or until further order of this Court.

 In re Insurance Brokerage Antitrust Litigation, MDL No. 1663, Civil Action No. 04-5185 (FSH) (USDC D.N.J.).

 In evaluating whether a practice is unfair in a G.L.c. 93A, §11 claim, a court assesses “(1) whether the practice ... is at least within the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; [and] (3) whether [the conduct] caused substantial injury . . .” PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). “[The statute] ‘ties liability for multiple damages to the degree of the defendant’s culpability by creating two classes of defendants.’ Those defendants who have committed ‘relatively innocent violations’ of the statute are not liable for multiple damages, while a second class of defendants who have committed ‘willful or knowing’ violations are.” DataComm Interface v. ComputerWorld, Inc., et at, 396 Mass. 760, 779 (1986). A “willful or knowing” violation is one where either the defendant affirmatively knew that a material representation was false or that the defendant made the representation with reckless disregard of its truth or falsity. See Shaw v. Rodman Ford Truck Center, Inc., 19 Mass.App.Ct. 709, 711-12 (1985). See also Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 475 (1991). The Van Emden complaint and the various complaints comprising the MDL Litigation allege exactly this type of egregious conduct. As to the allegations in the MDL cases, see Commercial Insurance Plaintiffs’ RICO Statement Pursuant to Local Rule 16.1(B)(4) (appearing as Exhibit 2 to the Affidavit of Daniel Savrin, dated September 8, 2005).