WILLIAM J. O'BRIEN *vs.* HANOVER INSURANCE COMPANY.

Suffolk. February 5, 1998. - April 8, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Arbitration,* Waiver, Appropriateness of judicial proceedings, Issue preclusion. *Waiver. Superior Court,* Jurisdiction. *Jurisdiction,* Arbitration, Superior Court. *Public Policy.*

This court concluded that a judge's grant of an application for a stay of arbitration under G. L. c. 251, § 2 (*b*), on the ground of issue preclusion, was appealable under G. L. c. 251, § 18 (*a*) (2). [197-198]

In a proceeding under G. L. c. 251, § 2, for a stay of arbitration, the Superior Court had jurisdiction to decide underlying issues of waiver and issue preclusion [198-200], and the matter was remanded to the Superior Court for decision of those issues "forthwith and summarily," pursuant to G. L. c. 251, § 2 (*b*) [200-202].

CIVIL ACTION commenced in the Superior Court Department on April 3, 1997.

The case was heard by *David M. Roseman,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Owen Gallagher* for the defendant.

*Edwin A. McCabe (Philip Y. Brown* with him) for the plaintiff.

FRIED, J. Pursuant to an arbitration agreement, Hanover Insurance Company and its former president, William J. O'Brien, submitted to arbitration the question whether O'Brien violated his severance agreement with Hanover. When Hanover subsequently commenced a multi-count suit against O'Brien and others, the arbitration panel temporarily stayed its proceedings. At the conclusion of the trial, and while some issues were on appeal, Hanover and O'Brien disagreed as to whether there was further need for arbitration. The arbitration panel stipulated with the parties to submit the issue to the Superior Court. In accordance with the stipulation, O'Brien filed an application for stay of arbitration in the Superior Court, and the Superior Court judge ordered a stay pending entry of the final judgment on all

issues currently on appeal. Hanover appealed from the stay, and O'Brien moved for a dismissal of Hanover's appeal. We granted Hanover's application for direct appellate review, and now remand the matter to the Superior Court for further proceedings consistent with this opinion.

## I

O'Brien resigned as the president of Hanover, and subsequently entered into an agreement with Hanover for the period between January 1, 1992, and December 1, 1994 (severance agreement). For the agreement period, O'Brien agreed to render consulting, advisory, and other related services to Hanover, and also agreed

> "not to directly or indirectly solicit the insurance business of any insured of Hanover and/or its subsidiaries or assist any other person to do so or solicit, recruit or assist or encourage a third party to solicit or recruit the services of any current employee, agent or broker of Hanover and/or its subsidiaries."

In exchange, Hanover agreed to pay O'Brien $12,500 a month for the agreement period.

The arbitration section of the severance agreement provided that any disputes arising out of the severance agreement would be referred to arbitrators. The section of the severance agreement entitled "Remedies" states:

> "You acknowledge that any breach of the provisions of this letter agreement shall result in serious and irreparable injury to Hanover . . . for which Hanover . . . cannot be adequately compensated by monetary damages alone. You agree, therefore, that in addition to any other remedy which they may have, Hanover . . . shall be entitled to specific performance of this letter agreement by you and to seek both temporary and permanent injunctive relief (to the extent permitted by law) without the necessity of proving actual damages."

On August 31, 1994, Hanover served a formal demand for arbitration on O'Brien alleging that O'Brien had not complied with the nonsolicitation clause of the severance agreement, and arbitration commenced shortly thereafter. Hanover claimed that

O'Brien had assisted in recruiting Hanover's then vice-president, John Sutton, for Insurance Partnerships, Inc. (IPI). IPI is an insurance company founded by Sutton, O'Brien, and another Hanover executive in 1992.

In December, 1994, Hanover filed suit (Sutton litigation) against Sutton, O'Brien, IPI, and William J. O'Brien, Inc. (WJO), an entity formed by O'Brien which was not a party to the severance agreement. In a multi-count complaint, Hanover alleged, among other things, that IPI and WJO tortiously interfered with Hanover's contractual relationship with O'Brien. In count eight, the only count against O'Brien personally, Hanover sought specific performance of the severance agreement and injunctive relief. The arbitration panel stayed all further arbitration until there was no longer a potential for conflict between its decision and that of the Superior Court.

The Sutton litigation was tried to a jury in February, 1995. On March 22, 1995, the judge made his findings and rulings on the nonjury counts. On count eight, one of the nonjury counts, the judge ruled that, because the term of the severance agreement had expired, specific performance would not be granted. At a subsequent hearing, the judge ruled that arbitration could continue and that he did not take any position "with respect to any preclusiveness" of the finding in the Sutton litigation. On May 9, 1996, the judge entered final judgment on count eight:

> "Judgment shall enter in favor of the Defendant William J. O'Brien on Count VIII without costs and without prejudice to the rights of the parties to arbitrate pursuant to the Severance Agreement."

Although several parties appealed from certain aspects of the final judgments on other counts, no party appealed from the judgment on count eight.

In November, 1996, the parties met with the arbitration panel to discuss the status of the arbitration proceeding. Hanover's counsel argued that arbitration should proceed. O'Brien's counsel argued that there was no further need for arbitration as all relevant issues had been litigated in the Sutton litigation. The arbitration panel decided that the parties should file briefs setting forth their arguments concerning the impact of the Sutton litigation on arbitration. On February 26, 1997, the arbitration panel entered into a stipulation with the parties that the

panel members were "in doubt about their authority to decide the issues on arbitrability and claims preclusion, and . . . that the issue is appropriate for a decision by the trial court." It was further stipulated that either party could apply to any court of competent jurisdiction for a stay of the arbitration proceeding.

On April 3, 1997, pursuant to the stipulation and G. L. c. 251, § 2, O'Brien filed an application for a stay of arbitration. The matter was heard by the same Superior Court judge who heard the Sutton litigation. On July 2, 1997, the judge allowed the application for a stay "pending entry of final judgment on all issues currently on appeal," from which Hanover has appealed. On November 26, 1997, O'Brien moved for a dismissal of Hanover's appeal.

We first address the question of the appealability of the Superior Court judge's order. Second, we consider whether the Superior Court or the arbitration panel should decide the issues of waiver and issue preclusion. Concluding that the Superior Court in this case should decide both issues, we consider finally whether the judge should have decided these issues immediately or awaited entry of final judgment on issues as to which an appeal was pending.

## II

O'Brien argues that Hanover's appeal should be dismissed because the judge's order was interlocutory, and therefore is not appealable. This argument is without merit. General Laws c. 251, § 18, specifically provides for appeal of the judge's order. The relevant portion of § 18 states:

> "(a) An appeal may be taken from: — . . . (2) an order granting an application to stay arbitration made under paragraph (b) of section two [of this chapter] . . . ."

O'Brien argues that § 18 (a) (2) is unavailable as an avenue of appeal here because his application to stay arbitration was not based on G. L. c. 251, § 2 (b). In his application for a stay of arbitration, O'Brien stated that he made the application pursuant to G. L. c. 251, § 2 (c). Subsection (c),[1] however, merely designates the court that has jurisdiction to entertain an applica-

---

[1]General Laws c. 251, § 2 (c), states:

> "If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdic-

tion for an order directing the parties to proceed to arbitration made pursuant to § 2 (*a*), or an application for a stay of an arbitration proceeding made pursuant to § 2 (*b*). Section 2 (*c*) itself does not provide an independent avenue for applying for a stay of an arbitration proceeding. Section 2 (*b*) is the only such avenue.

Section 2 (*b*) states:

> "Upon application, the superior court may stay an arbitration proceeding commenced or threatened if it finds that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily determined, and if the court finds for the applicant it shall order a stay of arbitration; otherwise the court shall order the parties to proceed to arbitration."

In *Home Gas Corp. of Mass., Inc.* v. *Walter's of Hadley, Inc.*, 403 Mass. 772 (1989), we rejected a reading of § 2 (*b*) that would preclude its applicability to any case where it is conceded that there is an arbitration clause. In that case, we took jurisdiction and affirmed the Superior Court judge's order granting a stay on the ground that the defendant's actions constituted a waiver of its right to arbitrate. Here too, O'Brien's application for a stay of arbitration is based on an alleged waiver. And we are unaware of any reason against considering issue preclusion as another sound basis for a § 2 (*b*) stay application. Section 2 (*b*) provides the only and, according to our decision in *Home Gas*, the correct avenue for such an application, and a stay pursuant to such an application is appealable under § 18 (*a*) (2).

### III

We next consider whether the Superior Court or the arbitration panel had jurisdiction to decide the issues of waiver and issue preclusion. Only if these issues were for the court was its stay properly granted.

The arbitration panel correctly referred the waiver issue to

tion to hear applications under paragraph (*a*), the application shall be made therein, otherwise and subject to section seventeen, the application may be made in any court of competent jurisdiction."

the Superior Court. "Whether a party has waived arbitration is a question of arbitrability for the court to determine." *Martin* v. *Norwood,* 395 Mass. 159, 162 (1985). Cf. *United Nuclear Corp.* v. *General Atomic Co.,* 93 N.M. 105, 122, cert. denied, 444 U.S. 911 (1979) ("[I]t is the province of the court to determine whether there has been a default. The parties are precluded from contracting to exclude the court from jurisdiction over this issue"), quoted in *Home Gas Corp. of Mass., Inc.* v. *Walter's of Hadley, Inc., supra* at 774-775; 2 I.R. MacNeil, R.E. Speidel & T.J. Stipanowich, Federal Arbitration Law § 21.3 (1995). Hanover concedes that the Superior Court should decide the waiver issue, and earlier entered into the stipulation with the arbitration panel and O'Brien to have the Superior Court decide the issue.

O'Brien argued before the arbitration panel that judgments entered in the Sutton litigation precluded Hanover from arbitrating its claim against him.[2] In *Miles* v. *Aetna Cas. & Sur. Co.,* 412 Mass. 424 (1992), this court upheld a decision of the Superior Court that, under the doctrine of issue preclusion, the outcome of a previous arbitration barred the plaintiff's action against the defendant. But we have not yet determined whether a court may stay arbitration on the ground that a previous court decision on an issue bars subsequent arbitration of that issue. Decisions in other jurisdictions provide little guidance. We do not, however, need to confront this question here because both Hanover and O'Brien entered into a stipulation with the arbitrators to present the issue to the Superior Court.[3] "The consensual nature of arbitration necessarily means that the parties retain the

---

[2] It is not clear whether O'Brien's argument before the arbitration panel was based on the doctrine of issue preclusion. The stipulation states that the arbitrators were in doubt about their authority to decide the issue of *claims* preclusion. In any event, the parties treat this as a matter of issue preclusion here.

[3] The relevant portion of the stipulation states:

"WHEREAS, the members of the Arbitration Panel are in doubt about their authority to decide the issues of arbitrability and claims preclusion, and have suggested to the Parties that the issue is appropriate for a decision by the trial court;

"NOW, THEREFORE, the Parties and the Arbitration Panel hereby agree that either Party may apply for a stay of this arbitration pursuant to G. L. c. 251, § 2 to any court of competent jurisdiction within twenty-one (21) days from the date of this Stipulation."

right to terminate by agreement their obligation to arbitrate. The only requirement is that each party does indeed agree to rescind the arbitration agreement." 2 I.R. MacNeil, R.E. Speidel & T.J. Stipanowich, *supra* at § 21.4.1, at 21:49, citing *Caribbean Ins. Serv. Inc.* v. *American Bankers Life Assur. Co.*, 715 F.2d 17 (1st Cir. 1983). Parties also must be able to "rescind" an arbitration agreement with respect to individual issues, such as the issue of issue preclusion. Cf. G. L. c. 251, § 2 (*d*).[4]

## IV

Given that the Superior Court had jurisdiction to decide the issues of waiver and issue preclusion, we must finally consider whether the judge should have proceeded directly to decide these questions rather than awaiting the entry of final judgment on the appealed issues.

Section 2 (*b*) states that questions arising as to the validity and enforceability of an arbitration agreement must be "forthwith and summarily determined." Such a rapid resolution is in line with the "strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial disputes." *Home Gas Corp. of Mass., Inc.* v. *Walter's of Hadley, Inc.*, *supra* at 774, quoting *Danvers* v. *Wexler Constr. Co.*, 12 Mass. App. Ct. 160, 163 (1981). See *United Cable Television Corp.* v. *Northwest Ill. Cable Corp.*, 128 Ill. 2d 301, 306 (1989). Therefore, the judge should have proceeded forthwith to decide whether there was a waiver.

The judge also should have decided the issue preclusion issue directly. The doctrine of issue preclusion requires a judgment to be "final" before that judgment can have preclusive effect. *Cousineau* v. *Laramee*, 388 Mass. 859, 863 n.4 (1983). We have not yet decided whether a judgment by a lower court should be considered final for this purpose while it is on appeal. See *Massachusetts Prop. Ins. Underwriting Ass'n* v. *Norrington*, 395 Mass. 751, 754 (1985) (assuming, without deciding, that although an appeal from an insured's conviction was pending in

---

[4]The pertinent portion of G. L. c. 251, § 2 (*d*), provides:

"Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect to such issue only."

the Appeals Court, his conviction constituted final judgment for issue preclusion purposes). The Federal rule, followed by a majority of the States, is that a trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal. See, e.g., *Southern Pac. Communications Co.* v. *American Tel. & Tel. Co.*, 740 F.2d 1011, 1018-1019 (D.C. Cir. 1984); *Bartlett* v. *Pullen*, 586 A.2d 1263, 1265 (Me. 1991). That rule is also favored by the Restatement (Second) of Judgments § 13 comment f (1982). But see, e.g., *Sandoval* v. *Superior Court*, 140 Cal. App. 3d 932, 936-937 (1983); *Petition of Donovan*, 137 N.H. 78, 81 (1993).

We are persuaded by the majority rule. Because G. L. c. 251 is our enactment of the Uniform Arbitration Act, it is appropriate to give strong weight to decisions in other jurisdictions. See 7 U.L.A. 1 (Master ed. 1997). The majority rule is especially appropriate in a case like this one. The demand of G. L. c. 251, § 2 (*b*) — that questions arising as to the validity and enforceability of an arbitration agreement be determined "forthwith and summarily" — applies to the question of issue preclusion as well as to that of waiver.

We remand this case to the Superior Court and order the judge to proceed to determine whether there has been a waiver,[5] and whether Hanover is precluded from arbitrating any issues by reason of the earlier litigation.[6] The stay of arbitration shall

---

[5]The *Home Gas* court enumerated several factors relevant in deciding whether a party has acted inconsistently with, and therefore waived, its right to arbitrate. *Home Gas Corp. of Mass., Inc.* v. *Walter's of Hadley, Inc.*, 403 Mass. 772, 775-776 (1989), quoting *Reid Burton Constr., Inc.* v. *Carpenters Dist. Council*, 614 F.2d 698, 702 (10th Cir.), cert. denied, 449 U.S. 824 (1980). These factors assume a case where the litigation preceded a demand for arbitration, and where the defaulting party waived his right to arbitrate by not asserting that right in a timely fashion. The factors are inapposite in cases like this one in which litigation began after the start of an arbitration proceeding.

[6]Hanover argues that no issue preclusion occurred by emphasizing that the Superior Court judge specifically entered a final judgment on count eight, the only count against O'Brien himself, without prejudice to any party in subsequent arbitration. This fact, however, is not conclusive on the issue preclusion issue. Under the doctrine of issue preclusion:

"[W]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or a different claim."

Restatement (Second) of Judgments § 27 (1982), quoted in *Cousineau* v.

be effective only until the entry of such judgment on these two questions.

*So ordered.*

Laramee, 388 Mass. 859, 863 n.4 (1983). If issues crucial to the O'Brien arbitration were litigated and decided in relation to O'Brien's codefendants in the Sutton litigation, then issue preclusion still applies. A defendant can use the doctrine of issue preclusion defensively against a plaintiff who was a party in a prior litigation, even if the defendant himself was not a party in the prior litigation, to the extent that the issues were treated as essential to, and were fully litigated and determined in, the prior litigation. *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Mar. Ins. Co.*, 354 Mass. 448, 455 (1968).