van Gestel, J.
This matter is before the Court on three motions: an emergency motion by the plaintiff, William A. McCormack (“Mr. McCormack”), for preliminary injunctive relief to preserve the status quo; an emergency motion by Mr. McCormack to stay arbitration; and an emergency motion by the defendants to impound certain of the pleadings filed herein. The Court heard full oral arguments from each side on December 23, 2004, and received from each party further briefing and other material during the week of December 27, 2004.
What is involved is an unfortunate dispute between a partner and some of his other partners in a prominent Boston law firm.

BACKGROUND

Mr. McCormack, relying upon his position as a full equity partner in the firm once known as Bingham, Dana & Gould, and later as .Bingham Dana LLP, complains of a number of matters relating to firm management and himself, and also complains that by the July 1, 2002 merger of Bingham Dana LLP and the firm of McCutchen, Doyle, Brown & Enersen, LLP, creating the present firm of Bingham McCutchen LLP, he has been “de-equitized.” Mr. McCormack seeks a wide array of declaratory and economic relief predicated upon counts charging: breach of fiduciary duly, Count I; breach of contract, Count II; breach of the covenant of good faith and fair dealing, Count III; violation of the Massachusetts Partnership Act, Count IV; conversion, Count V; and unjust enrichment, Count XI.[2]
Without addressing in detail the extensive allegations in the complaint, the facts of which are binding on Mr. McCormack under G.L.c. 231, Sec. 87 and his verification thereof, it is clear that in essentially all respects the claims made arise from the various versions of the Bingham McCutchen LLP partnership agreement, and the partnership agreements of the predecessor firm in place since Mr. McCormack first became an equity partner in 1975.
Affidavit evidence supports the legal conclusion that all amendments to the partnership agreements, including those effecting the merger on July 1, 2002, were duly voted and acted upon in a manner wholly consistent with the provisions of the agreements themselves.[3] Consequently, Mr. McCormack, his “deequitization” allegations notwithstanding, is still a partner of Bingham McCutchen LLP. Indeed, if he were not, much of what he complains about as breaches of fiduciary duly to him could not be brought.
This then leads this Court to the present version of the partnership agreement. Article VIII of the Restated and Amended Articles of Partnership of Bingham Mc-Cutchen LLP is entitled and governs Resolution of Legal Disputes. At least since the July 25, 1995 Restated and Amended Articles of Partnership of Bingham Dana LLP, there has been a Resolution of Legal Disputes provision in an Article VIII. The Article VIII currently in place addresses any “legal dispute, claim or controversy (’Claim’) arising between or among partners or former partners or between one or more a [sic] partners or former partners and the Firm . . .” Article VIII contains a three-step process: informal conciliation; mediation; and binding arbitration.
Mr. McCormack and the defendants here are presently at the beginning of the arbitration stage. Bingham McCutchen LLP demanded arbitration on September 29, 2004. The parties are early in the process of considering arbitrators.
Because of the significance of the arbitration provision, the Court quotes heavily from it. First, the Court quotes the kinds of matters to which the procedures are applicable:
. . . These procedures shall be applicable to any Claim arising out of or related to acts or omissions of any partner or of the Firm in connection with or arising out of the conduct of the Firm’s business practice or its affairs including, without limitation, all legal disputes, claims or controversies arising under these Articles or under applicable constitutions, statutes, regulations, codes of conduct, disciplinary rules or common law relating or affecting the conduct of the Firm’s business practice or its affairs or the professional relationships of the partners among themselves or the Firm. The procedures of this Article are mandatory and applicable to all partners and former partners, whether Equity Partners, Contract Partners or such other classification of partners as the Firm may have recognized or may from time to time adopt.
Each partner agrees that any Claim, and all matters concerning any Claim will be considered confidential, and will not be disclosed to any person outside the Firm except as provided below with respect to Mediation or Arbitration contemplated by this Arti *590 ele VIII, or as otherwise expressly agreed to by the Firm.
The arbitration portion of Article VIII begins as follows:
If such Claim is not fully resolved by mutual agreement of the parties to the dispute at the Mediation, the Claim, and any issue about whether the Claim is subject to arbitration, shall be resolved, on application of any party (the “Arbitration Initiation Date”), by final and binding arbitration (the “Arbitration”) before a single arbitrator (the “Arbitrator”) that is mutually agreeable to the partner or partners and the Firm . . .
There then follow procedural provisions for the selection and conduct of the arbitration proceedings. Included among them are that the arbitration will be handled by Judicial Arbitration & Mediation Services, Inc./Endispute (“JAMS”) and the arbitrator shall “have substantial experience in disputes involving large law firms or other professional firms.
DISCUSSION
Because of its controlling dominance in the present situation, the Court will address the arbitration issue first.
Motion to Stay Arbitration
Arbitration is always a matter of contract, and a party cannot be required to submit any dispute to arbitration unless he has agreed to do so. Local Union No. 1710, Intern. Ass’n of Fire Fighters, AFL-CIO v. City of Chicopee, 430 Mass. 417, 421 (1999); Rae F. Gill, P.C. v. DiGiovanni, 34 Mass.App.Ct. 498, 501 (1993). G.L.c. 251, Sec. 2(b) “directs the court, when considering an application for stay of arbitration proceeding, to order arbitration unless it finds that ‘there is no agreement to arbitrate.’ ” Quirk v. Data Terminal Systems, Inc., 379 Mass. 762, 768 (1980). Here, of course, there is a contract calling for arbitration the Bingham McCutchen LLP partnership agreement.
The Bingham McCutchen LLP partnership agreement, in Article VIII, constitutes an agreement to submit to arbitration the matter of any legal dispute, claim or controversy arising between Mr. McCormack, a partner or former partner, and one or more partners and Bingham McCutchen LLP. Further, Mr. McCormack is a highly skilled and sophisticated lawyer who, as such, must be considered fully capable of understanding this situation.
Mr. McCormack posits that the dense language of the arbitration clause and the fiduciary duties owed between and among partners must lead to a conclusion by this Court that the arbitration clause is not enforceable. This contention overlooks that fact that those individuals reading and voting on the partnership agreement and the arbitration clause included therein are each among the most sophisticated business oriented lawyers in Boston, and across the country for that matter. There is a significant difference between the effect of that sophistication on whether this Court should conclude that there is an agreement to arbitrate and whether the accused partners abided by their fiduciary duties to Mr. McCormack — and him, to them — in the conduct of the Firm’s business practice or its affairs. The former is for this Court to assess; the latter, for the arbitrator.[4]
So, too, is Mr. McCormack’s contention that the pre-arbitration steps of informal conciliation and mediation were conditions precedent to arbitration that were not complied with. These issues are for the arbitrator as well.
To conclude otherwise, would force the parties and this Court into a full dress evidentiary hearing and perhaps a trial on the basic issue of whether there was an agreement to arbitrate.
. . . Upon application, the superior court may stay an arbitration proceeding commenced or threatened if it finds that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily determined, and if the court finds for the applicant it shall order a stay of arbitration; otherwise the court shall order the parties to proceed to arbitration.
(Emphasis added.) G.L.c. 251, Sec. 2(b).
Proceeding forthwith and summarily means what it says. “(T]he judge should . . . proceed!) forthwith to decide whether there [should be arbitration or not].” O’Brien v. Hanover Insurance Company, 427 Mass. 194, 200 (1998). This concept is in line with the “strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial disputes.” Home Gas Corp. of Mass., Inc. v. Walter’s of Hadley, Inc., 403 Mass. 772, 774 (1989).
“Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, ‘procedural’ questions which grow out of the dispute should be left to the arbitrator.” John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964). See also, Paine Webber, Inc. v. Elahi, 87 F.3d 589, 599-600 (1st Cir. 1996); Local 285, SEIU v. Nonotuk Resource Associates, Inc., 64 F.3d 735, 740 (1st Cir. 1995). Here, the agreement itself dictates that result.
Courts have very limited roles to play in matters in arbitration. Basically, a judge may, at the beginning, determine whether the parties have agreed to arbitrate a particular matter and, at the end — subject to a veiy narrow scope — determine whether to set aside an arbitration award. However, once it is determined according to the parties’ agreement that a matter should be arbitrated, then questions relating to the interpretation of the agreement are for the arbitrator, not the Court. See Barnstead v. Ridder, 39 Mass.App.Ct. 934, 936 (1996). Similarly, the arbitration award may only be set aside if the arbitrator exceeded the scope of his or her authority or decided the matter based on fraud, arbitrary conduct, or pro *591 cedural irregularities in the hearing. See, e.g., Plymouth-Carver Regional School District v. J. Farmer & Co., Inc., 407 Mass. 1006, 1007 (1990).
Where a contract contains an arbitration clause, there is a presumption of arbitrability. Arbitration should not be denied unless it can be said with “positive assurance” that the particular arbitration clause cannot be construed to cover the dispute in issue. Drywall Systems, Inc. v. ZVI Construction Co., 435 Mass. 664, 666-67 (2002). The only “positive assurance” here is just to the contrary — clearly the arbitration clause covers disputes over all of the claims presented by Mr. McCormack.
There is a strong public policy favoring arbitration, and Courts must be exceedingly cautious about interfering with the proceeding or its results. Bureau of Special Investigations v. Coalition of Public Safety, 430 Mass. 601, 603-04 (2000); Minton Const. Corp. v. Commonwealth, 397 Mass. 879, 880 (1986); Carpenter v. Pomerantz, 36 Mass.App.Ct. 627, 628 (1994).
General principles of contract law must be applied to determine whether a particular agreement calls for arbitration. Mugnano-Bornstein v. Crowell, 42 Mass.App.Ct. 347, 350 (1997). Here, the contract itself grants to the arbitrator the authority to determine whether and what to arbitrate.
Also, the Court must resolve any questions of arbitrability “with a healthy regard for the federal policy favoring arbitration.” Moses H. Cohn Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983).
This Court concludes that Mr. McCormack and the partners at Bingham McCutchen LLP have contractually agreed to arbitrate, in a final and binding fashion, all of the claims that Mr. McCormack has set forth in the complaint in this action. It would be inappropriate to stay the arbitration currently commenced through the JAMS organization. Indeed, just the opposite — a stay of this litigation pending such arbitration — is the proper course to follow.

Motion for a Preliminary Injunction to Hold Matters in Status Quo

In considering Mr. McCormack’s request for a preliminary injunction, the Court must assess the elements set out in Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980): is there a substantial likelihood of success on the merits; is there a substantial risk of irreparable harm; and what is the effect of balancing the equities between the parties? See also GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993).
Mr. McCormack asks the Court to enjoin the defendants from terminating his current position at Bingham McCutchen LLP, from interfering with his continued practice of law at Bingham McCutchen LLP, and from reducing his compensation and perquisites at Bingham McCutchen LLP. He, quite correctly, expresses concern about that fate of clients that he is serving should there be an abrupt or inappropriate interference therewith.
Some of what Mr. McCormack asks is regulated by contract, some of it is governed by rules of professional responsibility, and some of it is controlled by the dictates of the high fiduciary duties owed between and among all partners at Bingham McCutchen LLP. The Court is not convinced, at this time, that the defendants are not fully aware of all that regulates and controls their actions or that they are likely to act in any way that is unprofessional or inappropriate with regard to Mr. McCormack under the present circumstances. Mr. McCormack, too, has similar duties running to Bingham McCutchen LLP and his partners, as well as more importantly to the clients, and this Court would not expect him to act contrary thereto either.
This Court will not be assessing the merits of the underlying claims. Mr. McCormack and the defendants have specifically agreed that that role will be the task of a qualified arbitrator, in a binding and final fashion. It therefore ought not attempt to assess the likelihood of success on the merits of those claims. Instead, it will look to the second of the Chaney factors — the question of a substantial risk of irreparable harm. Here, for the reasons stated in the preceding paragraph, this Court does not find that Mr. McCormack’s burden on this factor has been met in such a fashion that this Court should interfere in the delicate fiduciary and professional relationships between partners in a law firm and between lawyers and their clients. Should any party in this matter stray from strict compliance with their significant duties, this Court is always available, on very short notice, to act on a properly founded request for relief.
Thus, the Court will not, at this time, enter an order that will interfere with the unique and special relationship between and among attorneys practicing together in the same law firm. Both sides are admonished to consider first and foremost the best interests of the clients they serve and the noble profession of which they are a part.

Motion for Impoundment

The defendants seek impoundment of many of the pleadings and papers filed to date in this action. This, however, is a public court, and there is strong reason to disfavor litigating the matters here in secret. “The exercise of the power to restrict access . . . must recognize that impoundment is always the exception to the rule, and the power to deny public access to judicial records is to be ‘strictly construed in favor of the general principle of publicity.’ ” The Republican Company v. Appeals Court, 442 Mass. 218, 223 (2004).
“It is desirable that [judicial proceedings] should take place under the public eye .. . because it is of the highest moment that those who administer justice should always act under the sense of public responsi *592 bility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.” Cowley v. Pulsifer, 137 Mass. 392, 394 (1884).
Albeit in a quite different situation, the Supreme Judicial Court has made this point very clear.
. . . The uniform rules that now govern the impoundment of records in civil proceedings “incorporate many of the principles of our prior cases.” H.S. Gere & Sons v. Frey, 400 Mass. 326, 332 (1987). We interpret those rules in light of our long-standing recognition that “only in the most extreme situations, if at all, may a State court constitutionally forbid a newspaper (or anyone else) to report or comment on happenings . . . which have been held in open court; and a similar rule would apply to court files otherwise unrestricted.” Ottaway Newspapers, Inc. v. Appeals Court, 372 Mass. 539, 547-48 (1977).
The principle of publicity of judicial records is not, however, absolute. See Ottaway Newspapers, Inc. v. Appeals Court, supra at 548, (“how far a State is required to go in assisting the press [or others] to gather information [and] keep files open” is unclear). See also Nixon v. Warner Communications, Inc., 435 U.S. 589, 598-99 (1978). Courts possess supervisory power over their records and files, and have properly denied public access where those records and files “might have become a vehicle for improper purposes.” Id. at 598. We have explained that a court possesses “inherent equitable power to impound its files in a case and to deny public inspection of them . . . when justice so requires.” George W. Prescott Publ. Co. v. Register of Probate for Norfolk County, 395 Mass. 274, 277 (1985), quoting Sanford v. Boston Herald-Traveler Corp., 318 Mass. 156, 158 (1945).
Consistent with these principles, rule 7 of the uniform rules provides that a judge evaluating a motion to impound documents may enter an order of impoundment only if “good cause” to withhold documents from the public is shown. To determine whether good cause is shown, a judge must balance the rights of the parties based on the particular facts of each case. See Nixon v. Warner Communications, Inc., supra at 599 (decision to grant access to court documents is “best left to the sound discretion of the trial court” to be exercised in light of the relevant facts and circumstances of the particular case); Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware Div. of the Dist. Court Dep’t., 403 Mass. 628, 638 (1988) (Wilkins, J., concurring), citing Uniform Rules on Impoundment Procedure (1988). See also id. (judge must balance interests of publicity and defendant’s right to fair trial); H.S. Gere & Sons v. Frey, supra at 329 (judge must balance parties’ privacy concerns against general principle of publicity). If there is good cause to impound documents, a judge is required to tailor the scope of the impoundment order so that it does not exceed the need for impoundment. Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware Div. of the Dist. Court Dep’t, supra.
. . . There is a well-established common-law right of access to the judicial records of civil proceedings. See Nixon v. Warner Communications, Inc., supra at 597 (“the courts of this country recognize a general right to inspect and copy public records, and documents” [footnotes omitted]); Ottaway Newspapers, Inc. v. Appeals Court, supra at 546 (affirming “with emphasis” general principle of publicity in the absence of statutory limitation on access to judicial records). The presumption of access facilitates “the citizen’s desire to keep a watchful eye on the workings of public agencies,” permits the media to “publish information concerning the operation of government,” Nixon v. Warner Communications, Inc., supra at 598, and supports the public’s right to know “whether public servants are carrying out their duties in an efficient and law-abiding manner.” George W. Prescott Publ. Co. v. Register of Probate for Norfolk County, supra at 279, quoting Attorney Gen. v. Collector of Lynn, 377 Mass. 151, 158 (1979). Access to otherwise unrestricted records of judicial proceedings may therefore be viewed as an essential component of the general principle of publicity: “the public often would not have a ‘full understanding’ of the proceeding and therefore would not always be in a position to serve as an effective check on the system” if it were denied access to judicial records. Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 502 (1st Cir. 1989). See New Bedford Standard-Times Publ. Co. v. Clerk of the Third Dist. Court of Bristol 377 Mass. 404, 417 (1979) (Abrams, J., concurring) (“greater access to information about the actions of public officers and institutions is increasingly recognized as an essential ingredient of public confidence in government”).
The Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 603-05 (2000).
The practice of law has traditionally been, first and foremost, a learned profession, with service to clients as its main purpose. The relationship between lawyer and client is special in this respect, and is unlike the relationship between a seller and a customer in a commercial transaction. A lawyer is a representative of clients, an officer of the legal system, and a public citizen having special responsibiliiy for the quality of justice. The public has a significant interest and stake in knowing how members of this great profession act in their professional capacities.
Unlike the situation in In re Enforcement of a Subpoena, 436 Mass. 784, 796-98 (2002), this is not a matter governed by statutory mandates of confidentiality or secrecy.[5]
*593 This Court, being cognizant of the many concerns expressed, does not accept the contention that what is involved in this case mandates special or private attention of a sort not regularly granted to other professionals or business entities. Good cause to withhold documents from the public has not been shown.

ORDER

For the foregoing reasons: the emergency motion by the plaintiff, William A. McCormack, for preliminary injunctive relief to preserve the status quo is DENIED; the emergency motion of William A. McCormack to stay arbitration is DENIED; and the emergency motion of the defendants to impound certain of the pleadings filed herein is DENIED.
This Court Orders all further proceedings, including discoveiy, in this matter STAYED pending completion of the arbitration between the parties.

There are no counts VI through X.

Mr. McCormack asserts that the voting partners, including himself, did not wholly understand what they were voting on. This Court finds that assertion lacking in acceptance giving the legal competence of the voters involved.

It was operating under a partnership agreement, not whether there was a partnership agreement at all, that the SJC spoke about when it said, in Starr v. Fordham, 420 Mass. 178, 188 (1995), “(t]he plaintiffs sophistication did not relieve [the defendant] of his obligation to deal with the plaintiff in an honest manner.”

A mere desire for privacy is not a sufficient basis upon which to impound records in a public court. See, e.g., “Details of Pritzker fortune to be shared, court mies,” The Boston Globe, December 31, 2004, page D2, reporting on a December 30, 2004, decision by the Illinois Appellate Court overruling the Circuit Court of Cook County and vacating an impoundment order on financial and other records in the settlement of the Pritzker family suit over rights to an estimated $15 billion fortune.