McDonald, C. Brian, J.
INTRODUCTION
The plaintiff, Allied Home Mortgage Capital Corporation (“Allied”), filed this action against its former employees, Parker A. Grant (“Grant”) and James Warren Delorfano (“Delorfano”) (collectively, “the defendants”), seeking (a) damages resulting from the alleged breach of employment agreements (Count I), misappropriation of trade secrets and confidential information (Counts II and III), and intentional interference with contractual relations (Count IV), and (b) an order enjoining the defendants from breaching their employment agreements regarding noncompetition and violating statutory and common-law fiduciary duties of confidentiality and non-disclosure of confidential and proprietary business information (Count V). The defendants counterclaimed seeking (a) damages for breach of contract, for Allied’s alleged failure to pay them compensation in accordance with their employment agreements (Delorfano’s Counterclaim I and Grant’s Counterclaim II), and (b) a declaratory judgment regarding the proper interpretation of the customer non-solicitation provision of their employment agreements (Delorfano’s Counterclaim II and Grant’s Counterclaim III). Grant asserted a separate counterclaim alleging violation of the Massachusetts Payment of Wages Statute, G.L.c. 149, §§148 and 150 (the “Wages Statute”), for Allied’s alleged failure to pay commissions and other compensation due to him at the time of his termination (Grant’s Counterclaim I). Grant also filed a third-parly complaint against Peter Belli and David Zaharris, employees of Allied (the “third-party defendants"), alleging that they violated G.L.c. 149, §§148 and 150, for their roles in failing to pay his commissions and other compensation.
Allied and the third-party defendants move to dismiss the counterclaims and the third-party complaint under Mass.R.Civ.P. 12, and to compel arbitration, arguing that all of the claims asserted therein are subject to arbitration pursuant to their written employment agreements. They further argue that such claims no longer are arbitrable because the defendants failed to comply with the sixiy-day limitation period for initiating arbitration contained in the employment agreements. After hearing, and upon careful consideration of counsels’ oral arguments and memoranda, the motion to dismiss is allowed, in part and denied in part, and the motion to compel arbitration is allowed in part and denied in part.
BACKGROUND
The facts as asserted in the defendants’ counterclaim and Grant’s third-party complaint, which must be taken as true for purposes of a motion to dismiss, are as follows.
Allied is a Texas corporation in the business of mortgage banking; it operates its business in Massachusetts through multiple branch offices, including one at 189 Main Street, Milford, Massachusetts. On or about April 23, 2002, David Zaharris (“Zaharris”), acting as Allied manager and supervisor, hired Grant to work at Allied’s Milford branch as a mortgage loan officer. On or about August 19, 2002, Delorfano commenced his employment with Allied, also serving as a mortgage loan officer. As a condition of employment, each defendant executed an employment contract with Allied (the “Agreement”). They agreed inter alia, that they would not: “[1] disclose any of the [ ] company forms, procedures or records, nor use them in any way during the term of the Agreement, except as required in the course of [their] employment, and at no time thereafter; [2] directly or indirectly in any manner, either as an Employee, Consultant, Agent, Principal, Partner, Stockholder, Corporate Officer, Director, or in any other individual or representative capacity, engage or participate in any business competing in any manner whatsoever with the business of Employer; [3] disclose the name of or contact or solicit business from any person, partnership, business or entity who at the time of such termination is a customer of the Employer, or refers business to Employer within a twenty-five mile radius of the office at which employee works [for a period of one year from the date of the termination of employment; [and] [4] solicit, attempt to hire or hire any other personnel or employees of Employer or any of its subsidiaries or affiliates without written approval of Employer.” Agreement Art. IV, §§4.1-4.3.
As compensation for their services, Allied was obligated to pay the defendants twenty-five percent of the “net proceeds plus bonus.” Agreement Art. Ill, §3.1. Allied subsequently increased this commission rate to thirty percent of the “net proceeds.” Nothing in the Agreement defined “net proceeds.” Article §3.2, of the Agreement provides that “[u]pon the termination of employment for any reason, [the defendants] shall be paid, for all loans actively solicited, originated, and processed by [the defendants] which are approved and closed prior to the [defendants’] termination date less *315 any repayable advances and other monies owed to Employer.”
The top of the first page of the Agreement contains the following paragraph, in capital letters and boldface as set out here:
THIS EMPLOYMENT AGREEMENT IS SUBJECTTO ARBITRATION. BY SIGNING THIS EMPLOYMENT AGREEMENT, YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL FOR CERTAIN CLAIMS. PLEASE READ ARTICLE V, 5.1 CAREFULLY.
Article V, §5.1, provides, in relevant part, that the parties agreed:
to submit to final and binding arbitration any and all disputes, claims (whether in tort, contract, statutory, or otherwise), and disagreements concerning the interpretation or application of this Agreement and Employee’s employment by Employer and the termination of this Agreement and Employee’s employment by Employer including the arbitrability of any such controversy or claim.
Any arbitration is to be conducted pursuant to the rules of the American Arbitration Association and “initiated within sixty days of the action, inaction, or occurrence.” Agreement Art. V, §5.1. The mandatory arbitration provision, however, precludes the arbitration of “any dispute, claim, or disagreement arising under Article IV,” namely, the non-disclosure, non-competition, non-solicitation covenants. Id.
On October 30, 2003, Zaharris terminated Grant’s employment under the belief that Grant had decided to leave Allied to work for a particular competitor, which Grant alleges was incorrect at the time. On February 12, 2004, Delorfano ended his employment with Allied. Thereafter, the defendants commenced their employment with Allied’s direct competitor, 1st New England Mortgage Corporation (“1st New England”).
On March 18, 2004, Allied filed an action against the defendants for violations of the restrictive covenants contained in the Agreement, alleging on information and belief that the defendants: (1) contacted Allied former employees and encouraged them to leave Allied and join them at 1st New England: (2) solicited Allied customers to transfer their mortgages to 1 st New England: and (3) downloaded and/or obtained printed copies of Allied’s customer information, including but not limited to names, addresses, and confidential account information. On April 12, 2004, the defendants filed their answer to the complaint, with counterclaims. Grant filed his third-party complaint against Zaharris and Belli (“Belli”) on April 27, 2004.
Grant’s Counterclaims and Third-Party Complaint
Grant alleges that Allied failed to pay him approximately $7,905.00[4] for all loans solicited, originated and processed by him that were approved and closed prior to his termination date. On December 18, 2003, Grant sent Belli a letter demanding payment. Grant did not receive any response or payment from Belli or Allied. On January 12, 2004, Grant filed a non-payment of wage complaint with the Attorney General’s Office, Fair Labor and Business Practices Division. On March 9, 2004, Grant received a right-to-sue letter from the Attorney General’s Office, thereby authorizing Grant to pursue the matter privately in accordance with G.L.c. 149. Accordingly, Grant asserts a violation of the Wages Statute and a breach of Allied’s contractual obligation under the Agreement
Grant further alleges in his breach of contract claim that Allied failed to pay him twenty-five percent of Allied’s actual “net proceeds” as called for by the Agreement. Grant alleges that unlike other mortgage companies, Allied’s loan officer commissions were not taken from the actual net proceeds received by Allied (i.e., after the bank or lending institution received its fee). Rather, Allied deducted referral fees and a basis point (both paid to Allied and/or its managers) from its total fee, and then calculated Grant’s commission rate from the remaining “net proceeds,” resulting in a commission of approximately eighteen percent, not twenty-five percent (subsequently increased to twenty-two percent, not thirty percent). Grant also claims that after determining his commission, Allied deducted an additional fifty dollars for a “bonus to the loan processor,” despite having already charged Grant a $550.00 loan processing fee.
Grant further alleges that upon closing a loan arising from a lead provided by Allied, he was required to pay Allied a $550.00 fee to buy that lead. This fee was deducted from his commission for that loan. Grant alleges that Allied managers informed him that the lead thereby became his “personal referral,” or customer. Once an Allied loan officer bought a lead at closing, he never had to pay the $550.00 fee again for a future loan or refinancing for this customer. Accordingly, Grant claims that an actual dispute exists between Grant and Allied over the definition of “customers of the Employer” at the time of Grant’s termination, as that term is used in the customer non-solicitation provision contained in Art. IV, §4.2. He seeks a declaratory judgment as to whether the definition of “customers of the Employer” includes customers who were personal referrals of the defendants and customers for whom they closed loans at Allied. Grant contends that the non-solicitation provision is unenforceable because he owned the goodwill with respect to such customers.
Delorfano’s Counterclaims
Delorfano’s counterclaims echo the breach of contract and declaratory judgment counterclaims of Grant.
DISCUSSION
The motion to dismiss the counterclaims and third-party claim requires the Court to decide: (1) whether *316 a valid and enforceable arbitration agreement exists to create a waiver of access to the judicial forum; and (2) whether the defendants’ counterclaims and thirdparly claim fall within the purview of the arbitration agreement.
A plaintiff (or a plaintiff-in-counterclaim) “need only surmount a minimal hurdle to survive a motion to dismiss.” Bell v. Mazza, 394 Mass. 176, 184 (1985). When evaluating the sufficiency of a complaint or counterclaim, the court must accept as true the factual allegations thereof and all reasonable inferences favorable to the complaining party which can be drawn from those allegations. Fairneny v. Savogran, 422 Mass. 469, 470 (1996); Eyal v. Helen Broad. Corp., 411 Mass. 426, 429 (1991); Blank v. Chelmsford OB/GYN, P.C., 420 Mass. 404, 407 (1995). The issue is whether the facts alleged, generously construed in favor of the complaining party, state a valid legal claim that would warrant relief on any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979); Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (a complaint is sufficient “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief’). “(Djismissal on the basis of pleadings, before facts have been found, are discouraged.” Gennari v. Revere, 23 Mass.App.Ct. 979, 980 (1987) (authorities collected).
Massachusetts recognizes a strong public policy in favor of arbitration as an expeditious alternative to litigation for settling disputes. Danvers v. Wexler Constr. Co., 12 Mass.App.Ct. 160, 163 (1981); see also Dry wall Sys., Inc. v. ZVI Constr. Co., 435 Mass. 664, 669 (2002). For that reason, where a contract contains an arbitration clause, “there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.” Local No. 1710, Int’l Ass’n of Fire Fighters, AFL-CIO v. Chicopee, 430 Mass. 417, 421 (1999) (citation omitted); see Carpenter v. Pomerantz, 36 Mass.App.Ct. 627, 633 (1994) (generally, “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability”) (citation omitted).
I. Enforceability of the Arbitration Agreement
Arbitration is always a matter of contract, and a party cannot be required to submit any dispute to arbitration unless he has agreed to do so. Local Union No. 1710, Int’l Ass’n of Fire Fighters, AFL-CIO, 430 Mass. at 421; Rae F. Gill P.C. v. DiGiovan, 34 Mass.App.Ct 498, 501 (1993). A written agreement to arbitrate “shall be valid, enforceable, and irrevocable.” G.L.c. 251, §1; see O’Brien v. Hanover Ins. Co., 427 Mass. 194, 200 (1998).
The defendants argue that the arbitration provision was not a negotiated term, but merely part of a standardized form contract, and, therefore, constitutes a contract of adhesion. They cite a single case from the United States Ninth Circuit Court of Appeals, Circuit City Stores, Inc. v. Adams, 279 F.3d 889 (9th Cir. 2002), applying California law, holding that contracts of adhesion will not be enforced unless they are conscionable and within the reasonable expectations of the parties.
Courts refuse to enforce contracts of adhesion that are unconscionable, are unfair in the particular circumstance, or that offend public policy, Chase Commercial Corp. v. Owen, 32 Mass.App.Ct. 248, 253 (1992); Bull HN Info. Systems v. Hutson, 229 F.3d 321, 331 (1 st Cir. 2000). However, the inequality in bargaining power between employer and hopeful employee “is not sufficient reason to hold that arbitration agreements are never enforceable in the employment context.” Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991); see also Rosenberg v. Merrill Lynch Pierce, Fenner & Smith, Inc., 170 F.3d 1, 17 (1st Cir. 1999) (declining to hold that the arbitration agreement was unenforceable as a contract of adhesion). The defendants’ argument regarding the disparity of bargaining power between the parties, without more, is insufficient to render the arbitration agreement unconscionable. Deluca v. Bear Stearns & Co., Inc., 175 F.Sup.2d 102, 114-15 (D.Mass. 2001) (applying Massachusetts law) (“absent a showing of fraud or oppressive conduct,” a pre-dispute arbitration agreement in the employment contract “is not unenforceable on [unconscionability] grounds”). Accordingly, the arbitration provision in the Agreement is valid and enforceable, constituting a waiver of the defendants’ right to litigate claims that fall within the scope of the arbitration provision.[5]
II. Motion to Dismiss Breach of Contract Counterclaims
The defendants do not dispute that their breach of contract counterclaims fall within the scope of the arbitration clause. Rather, they assert that a substantial risk of inconsistent decisions would result if they were compelled to arbitrate these counterclaims while Allied proceeded with its action in court. These counterclaims involve allegations of Allied’s failure to pay salary, bonuses and other benefits specified in the Agreement, while Allied’s complaint alleges that the defendants violated Article IV of the Agreement. The Court sees no reason why it should not decide Allied’s claims regarding the defendants’ alleged unlawful solicitation of customers and employees, i.e., post-employment conduct, while an arbitrator decides the defendants’ claims regarding commissions and compensation, i.e., employment issues. See Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 681 (5th *317 Cir. 1976) (in multiparty, multiclaim action, the trial court properly ordered that the nonarbitrable claims proceed to trial while the remaining claims simultaneously proceed to arbitration). The Court further does not perceive any risk, of inconsistency resulting from the Court and the arbitrator deciding unrelated claims.
Declaratory Judgment Counterclaims
Allied and the third-party defendants contend that the defendants’ declaratory judgment counterclaims, seeking a judicial interpretation of Article IV’s non-solicitation clause as applied to customers obtained by the defendants through personal referrals and previously closed loans, are covered by the arbitration clause, which expressly applies to “disagreements concerning the interpretation or application of this Agreement.” The defendants argue that the counterclaims are excluded from the mandatory arbitration agreement because they fall squarely within the Article IV exemption. The Court agrees.
The Supreme Judicial Court has acknowledged that the issue of arbitrability may be referred to the arbitrator if there is “clear and unmistakable evidence” from the arbitration agreement that the parties intended that the question of arbitrability shall be decided by the arbitrator. Local Union No. 1710, Int’l Ass’n of Fire Fighters, AFL-CIO, 430 Mass. at 421. Although Art. V, §5.1, provides that “the arbitrability of any (] controversy or claim" is for the arbitrator, it explicitly precludes the arbitration of “any dispute, claim, or disagreement arising under Article IV.” This incorporation serves as clear and unmistakable evidence of the parties’ intent to resolve issues arising under Article IV in a judicial forum. Accordingly, the interpretation of Art. IV, §4.2, is without a doubt outside the scope of arbitration, and thus, for the Court’s determination. Accordingly, the motion to dismiss the declaratory judgment counterclaims must be denied.
Wages Statute Counterclaim and Third-Party Claim
Grant’s first counterclaim and third-party claim allege that Allied and the third-party defendants violated the Wages Statute[6] by their failure to pay commissions and other compensation due to him. Allied and the third-party defendants contend that dismissal of these claims is appropriate because they are not a category of claims which the Agreement specifically exempts from arbitration. Grant, however, asserts that the Wages Statute grants him access to a judicial forum and that this grant cannot be waived by an agreement for arbitration. As authority, he cites Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (1981), in which the Supreme Court held that an arbitration decision on a minimum wage claim, pursuant to a collective bargaining agreement, did not bar a subsequent action in federal court under the Fair Labor Standards Act. Grant’s reliance on Barrentine is misguided. That case involved the issue whether mandated arbitration under a collective bargaining agreement precluded a subsequent statutory claim, and has no application here as it does not concern ordinary employment contracts. See also Gilmer, 500 U.S. at 35 (noting the difference between contractual rights under a collective bargaining agreement and individual statutory rights, the potential disparity in interests between a union and an employee, and the limited authority and power of labor arbitrators).
While certain personal, statutory rights, including rights under G.L.c. 149, §148, can be enforced judicially even though they are incorporated into a collective bargaining agreement, Newton v. Comm’r of Dept. of Youth Serv., 62 Mass.App.Ct. 343, 346 (2004), and cases cited, that rule is inapplicable to individually executed employment contracts containing arbitration agreements like the one at issue here. Blanchette v. Sch. Comm. of Westwood, 427 Mass. 176, 183-84 (1998). Grant made an explicit and voluntary waiver of his right to pursue his statutory claim in a judicial forum when he signed the Agreement, which clearly provides that “all disputes, claims (where in tort, contract, statutory, or otherwise)” are to be submitted to final and binding arbitration. Agreement Art. V, §5.1 (emphasis added). Grant’s counterclaim and thirdparly claim, thus, come within the scope of the arbitration agreement and are proper subjects for arbitration.
Time Limitation
Finally, Allied and the third-party defendants assert that the dismissal of the defendants’ counterclaims and third-parly complaint is warranted by the defendants’ failure to comply with the sixty-day limitation period in the arbitration provision.
Although the Court has the power, inherently and by rule, to control the efficient disposition of cases on its docket, Danvers, 12 Mass.App.Ct. at 164 (citations omitted), it will not exercise its authority to do so in circumstances where there are enforceable arbitration agreements, as here. Allied and the third-party defendants’ contention that Local Union No 1710, Int’l Ass’n of Fire Fighters, AFL-CIO, 430 Mass. at 425, stands for the proposition that the court, not the arbitrator, must make the determination that all preconditions to arbitration have been met, is unavailing in view of Massachusetts Highway Dep’t v. Perini Corp., 444 Mass. 366 (2005). There, the Supreme Judicial Court overruled the portion of Local Union No. 1710, Int’l Ass’n of Fire Fighters, AFL-CIO, 430 Mass. at 426, that concluded that in a context of an expressly limited arbitration clause, the court has the task of determining whether the agreement allowed the arbitrator to interpret the agreement’s timeliness requirement for grievances. The Court quoted approvingly Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002), which stated that “in the absence of any statement to the contrary in the arbitration agree *318 ment, it is reasonable to infer that the parties intended” arbitrators to interpret and apply procedural rules of arbitration. The Supreme Judicial Court, subsequently, held that “[o]nly those contracts with arbitration clauses that expressly preclude arbitrators from deciding gateway procedural disputes will support judicial intervention.” Massachusetts Highway Dep’t, 444 Mass. at 376 n. 11. Article V, §5.1, does not prohibit the arbitrator from determining the arbitration procedural questions. Accordingly, arbitration is the appropriate venue to decide the defendants’ compliance with the procedures of the arbitration agreement. Id. at 378, quoting John Wiley & Sons v. Livingston, 376 U.S. 543, 557 (1964) (“(o)nce it is determined [by the court] that the parties are obligated to submit the subject matter of a dispute to arbitration, ‘procedural’ questions which grow out of the dispute,” i.e., the issue of the defendants’ compliance with arbitration procedures, “should be left to the arbitrator”).
ORDER
It is hereby ORDERED that the Plaintiffs Motion to Dismiss Counterclaims and Third-Party Complaint shall be and is ALLOWED with respect to Delorfano’s Counterclaim I, Grant’s Counterclaims I and II and Grant’s third-party complaint, and DENIED with respect to Delorfano’s Counterclaim II and Grant’s Counterclaim III, and it is further ORDERED that the Plaintiffs Motion to Compel Arbitration shall be and is ALLOWED as to Delorfano’s Counterclaim I, Grant’s Counterclaims I and II and Grant’s third-party complaint and DENIED as to Delorfano’s Counterclaim II and Grant’s Counterclaim III.

 The sum includes a $175.00 out-of-pocket expense for a customer’s appraisal for which Allied failed to reimburse Grant.

 The defendants argue that the arbitration policy is unenforceable because they did not knowingly and voluntarily waive their right to a judicial forum, citing the First Circuit opinion in Ramirez-De-Arellano v. American Airlines, Inc., 133 F.3d 89 (1st Cir. 1997), for the proposition that an arbitration provision that waived the right to a judicial forum “must at least be express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question.” Id. at 91 (citation omitted). The defendants maintain that Art. V, §5.1, although referring to mandatory arbitration, does not contain an explicit waiver of their right to trial. They argue that the notice mentioned on the first page of the Agreement is insufficient because it does not specify which claims are subject to waiver and “fails to connect the waiver of rights with the types of claims covered by the arbitration provision.” Reliance on Ramirez-De-Arellano is unavailing. That case involved a grievance procedure contained in an employee handbook and not an arbitration provision contained in a separately executed agreement. Further, failure to include the waiver in Art. V, §5.1, does not invalidate the arbitration clause. Here, the clear and unambiguous capitalized and boldfaced words evidencing waiver of a right to a jury trial was more than sufficient to put the defendants on notice that, by signing the Agreement, they would be required to arbitrate their disputes. The waiver provision expressly directs the employee to read the arbitration clause “carefully.” Article V, §5.1, elaborates on the types of claims that fall within the arbitration provision. The defendants, thus, do not have the option of litigating their claims, including employment disputes (with limited exception to Article IV) where they effectively waived their right to a judicial forum by executing the Agreement.

 General Laws c. 149, §148, as amended through St. 1992, c. 133, §503, in pertinent part, provides, “[e]very person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week... ” Wages earned by a salaried employee “may be paid weekly, bi-weekly, or semi-monthly to a salaried employee, but in no event shall wages remain unpaid by an employer for more than six days from the termination of the pay period in which such wages were earned by the employee.” Id. The purpose of G.L.c. 149, §148, is to prevent the evil of the “unreasonable detention of wages [by employers].” Boston Police Patrolmen’s Ass'n, Inc. v. Boston, 435 Mass. 718, 720 (2002). As such, it bestows upon individual workers the right to recover not only their lost wages, but also treble damages, reasonable attorneys fees, and costs. G.L.c. 149, §150.